KELLEY ISLAND LIME AND TRANSPORT COMPANY v. H. MASTERSON.

No. 1558. Decided May 23, 1906.

**1.—Partnership—Sharing Profits.**

One who puts his credit and money into an enterprise against the skill and service of others, in the performance of contracts · by the others with a third party, with the agreement that he is to receive a certain part of the profits as compensation, becomes a partner, and is liable for debts incurred by them in the undertaking. (P. 43.)

**2.—Same—Facts Stated.**

D. & Co., having a contract with a city for paving and sewerage construction necessitating the advance of $27,000 and the execution of a large bond by a surety company, M., by agreement with them, advanced the money needed and secured the surety company in making the bond; he was to be compensated by a share in the profits, and D. & Co. were to give their time and skill to the prosecution of the work and receive a share in the profits. Held, that H., by such contract, became a partner with D. & Co. in the enterprise, and liable for debts incurred by them therein. (Pp. 39–44.)

**3.—Same—Case Distinguished.**

Buzard v. First Nat. Bank of Greenville, 67 Texas, 83, distinguished as being a case where profits were taken as compensation for services as agent. (P. 44.)

Question certified from the Court of Civil Appeal for the First District, in an appeal from Harris County.

*Hardy & Hardy* and *Ford, Stone & Ford,* for appellant.—In determining the question of partnership the actual relation consequent upon the engagement of the parties will be looked to, and as to ,creditors the party who shares in the profits must also share in the losses. Cothran v. Marmaduke, 60 Texas, 372; Stevens v. Gainesville National Bank, 62 Texas, 499; Buzzard v. First National Bank, 67 Texas, 83; Dilley v. Abright, 19 Texas Civ. App., 489, 48 S. W. Rep., 548; Rahl v. Parlin, etc., 64 S. W. Rep., 1007; Cleveland v. Anderson, 2 Texas Court of Appeals, Civil Cases, pp. 138, 139; Edwards v. Buchanan, 36 S. W. Rep., 1028, also 14 Texas Civ. App., 280; Fouke v. Brengle, 51 S. W. Rep., 520; Rahl v. Parlin, 64 S. W. Rep., 1008; Waggoner v. First National Bank, 43 Neb., 94; Jones v. Murphy, 93 Va., 218, 24 S. E. Rep.,-826, 49 Am. Rep., p. 255, note.

Where one advances money under agreement that principal be refunded with or without interest, and for compensation he is to share in net profits of adventure, such lender is a partner. Same authorities.

*H. & A. R. Masterson* and *Fisher & Fisher,* for appellee.—Advancing money to a firm under an agreement to share profits, if any, does not constitute a partnership. Buzard v. First National Bank, 67 Texas, 83; Approved in Brown v. Watson, 72 Texas, 221; Approved in Emberson v. McKenna, 16 S. W. Rep., 419; Approved in Friedlander v. Hillcoat, 14 S. W. Rep., 786.

Community of interests essential to partnership. Mechem's Elements of Partnership, par. 50, 68.

Profits as interest on loans. Bates on Partnership, par. 47; Bullen v. Sharp, L. R. 1 C. P., 86; Ex parte Tennant, 6 Ch. · D., 303; Mollwo,

March & Co. v. Court of Wards, L. R. 4 P. C. App. Cas., 419; Dean v. Harris, 33 L. T. N. S., 639; Kelly v. Scotto, 49 L. J., Ch., 383, 42 L. T. N. S., 827; Cully v. Edwards, 44 Ark., 423.

Where a share of the profits earned under an agreement is merely a debt or personal claim by one party against his associate growing out of services rendered, or the use of property, the parties are not mutual agents, and hence not partners. Altgelt Administrator v. Alamo National Bank, 9 Texas Court Reporter, 769.

BROWN, ASSOCIATE JUSTICE.—Certified question from the Court of Civil Appeals, First District, as follows:

The Kelley Island Lime and Transport Co. sued H. Masterson as a member of the partnership doing business under the firm name of H. W. Downey & Co. The purpose of the suit was to recover the value of certain goods purchased by the firm. On allegations that H. W. Downey was dead and that George B. Kelley, the third member of the alleged partnership was insolvent, Masterson alone was made defendant.

From a judgment by the court below in favor of Masterson the cause is pending before us on appeal. The main question was and is whether Masterson was a partner as to appellants.

The facts are as follows: The city of Beaumont advertised for bids for the paving of certain of its streets and the construction of a sewer system. H. W. Downey and George B. Kelley, composing the firm of H. W. Downey & Co., were the successful bidders and to them the contract was awarded.

As a condition to the final acceptance of their bid the city required that they should execute a bond with a surety company as surety for the faithful performance of their undertaking. The surety company as a condition precedent to its becoming a party to the required bond demanded personal indemnity, and Downey & Co., being unable otherwise to furnish it, applied to Masterson to furnish the indemnity. It was also necessary that the firm should have as much as $10,000 to begin operations and $17,000 to turn over to the city to make the city bonds par value.

Masterson consented to furnish the required cash and the indemnity upon the terms evidenced by the following contract in writing which was duly signed by the firm as party of the first part and Masterson as party of the second part.

"The State of Texas, county of Jefferson. Memorandum of contract and agreement this day entered into by and between H. W. Downey & Co., a partnership composed of H. W. Downey and George B. Kelley, parties of the first part, and H. Masterson of Harris County, Texas, party of the second part, witnesseth:

"Whereas, said parties of the first part have made and entered into a contract with the city of Beaumont, through its duly authorized and empowered officers, relative to the constructing and laying certain sewerage work and certain brick pavement work, the two contracts amounting in the aggregate to two hundred and sixty-six thousand, one hundred and three and fifty-five hundredth ($266,103 $^{55}/_{100}$) dollars, and both of said contracts for the purpose of this agreement being treated as one;

"And Whereas, Said Downey & Co. were required by the terms of

said contract to make and enter into bonds in large amounts for the performance of said contracts;

"And Whereas, The surety companies require indemnity bonds to them before they will go on the bonds of said Downey & Company for the performance of said work;

"And Whereas, Said Downey & Co. are unable to meet such requirement, and have applied to party of the second part to go on their bond of indemnity to such surety companies as may go on their bonds in said contracts;

"And Whereas, Said Downey & Co. have figured out an estimate of their profits in the two contracts aforesaid, treated herein as one, of approximately $53,000;

"And Whereas, Said party of the second part knows nothing personally of the correctness and accuracy of the figures and calculation of said Downey & Co. made on said work, but relying full faith and confidence on the declarations and assertions and the accuracy of the said Downey & Co. in the premises, has consented to go on said-indemnity bond to such surety companies and to furnish or secure the sum of ten thousand ($10,000) dollars in cash, or as much more as may be necessary, to be applied to the prosecution of said work; and the further sum of about seventeen thousand ($17,000) dollars necessary to pay the city of Beaumont to enable her to obtain par for her payment and sewerage bonds.

"Now, therefore, in consideration of the premises aforesaid, and $10 to us in cash in hand paid by the party of the second part, the receipt whereof is hereby acknowledged, have granted, bargained, sold, transferred, set over, conveyed and assigned, and do by these presents grant, bargain, sell, transfer, assign, set over and convey unto the party of the second part, his heirs and assigns, the two contracts aforesaid (one for sewerage and the other for paving work) with the city of Beaumont, together with all and singular all rights, remedies and privileges thereunder or thereto in anywise belonging or appertaining; and we, the parties hereto, hereby authorize, request, and instruct that any and all drafts, orders and checks given in payment of said work, or any of it, be made payable to the Gulf National Bank of Beaumont, trustee, and by said bank collected and receipted for the proper officer of said city of Beaumont. It is mutually agreed to by and between the said parties of the first part and the party of the second part that when and after the two contracts, aforesaid, treated herein as one, shall have been completed and finished and the work thereunder accepted and paid for, and after paying all costs and the expenses of said work and material, and all liabilities incident to or growing out of said contracts, including eight (8%) percent interest on all money put into said contracts, work or material advanced by said party of the second part for account of said contract, work or material, that as a further consideration for this transfer, the said parties of the first part are to have and receive out of the net profits of said two contracts, treated herein as one, twenty-five thousand ($25,000) dollars, after the party of the second part hereto has first had and received twelve thousand five hundred ($12,500) dollars for himself out of such net profits. That in the event that only twelve thousand, five hundred ($12,500) dollars or less, net profits shall be

realized out of said two contracts, treated herein as one, such amount shall go to and belong to said party of the second part and the said parties of the first part shall not have any claim to or interest therein.

"And said party of the second part is, under no circumstances, to be or become liable to said parties of the first part for any sum or amount of money whatever, except as aforesaid, viz.: Twenty-five thousand ($25,000) dollars out of the net profits received by said party of the second part on said two contracts, treated herein as one, after first having received for himself and as his own, twelve thousand, five hundred ($12,500) dollars out of the net profits of said two contracts, treated as one.

"The said party of the second part is not to be liable to said parties of the first part for mismanagement or for anything else that results in reducing the profits or destroying the profits on said contracts, and it is out of the net profits alone, as hereinbefore stated, and on the terms and conditions stated, that said parties of the first part are to receive or to have any claim for any money growing out of or pertaining to said contracts. The net profits herein referred to mean net profits on both contracts, sewerage and paving, treated as one.

"Said parties of the first part agree, bind and obligate themselves and each of them to devote their entire time, talent and attention to said contract work until the same shall have been fully completed and accepted by the city of Beaumont; that each of them are to receive for their services one hundred ($100) dollars per month as an advance on their contingent interest in the net profits of said contracts, as aforesaid. Should said parties of the first part, from any cause whatever, sickness excepted, fail, refuse or neglect to give their full time, talent and attention to said contract work, and in that event they shall not be entitled to, nor shall they have any claim to, or for any part of the net profits that may be realized out of said contract work, aforesaid.

"If there should be over thirty-seven thousand, five hundred ($37,500) dollars profits received by said party of the second part out of said contracts, he hereby agrees to pay two-thirds ($^2/_3$) of such excess to the parties of the first part.

"Witness our hands this the first day of June, A. D. 1903.

"H. W. Downey,
"George B. Kelley,
Composing the firm of H. W. Downey & Co.
"H. Masterson,
Party of the second part."

In accordance with the terms of this instrument Masterson furnished the indemnity and cash as stipulated.

Downey & Co. thereupon entered upon the performance of their undertaking and proceeded with it until the 2d day of October, 1903, during which time Masterson had advanced to them more than $100,000. Masterson neither had nor exercised any control over the work, but at his request Downey & Co. appointed a bookkeeper and timekeeper selected by Masterson to the end that the accounts should be fairly kept.

On October 2, 1903, it had become apparent that the enterprise would

result in considerable loss which, because Downey & Co. were insolvent, would fall on Masterson. In consequence of this state of affairs, the work being then unfinished, the parties entered into the following contract:

"The State of Texas, county of Jefferson. Know All Men By These Presents, That whereas, we have been unable to sell or dispose of the sewer or paving bonds of the city of Beaumont, in which a large proportion of the pay is to be, and has been, received, under our contract with said city of Beaumont, and in consequence thereof we are unable to further proceed with the work under our said contract:

"And Whereas, H. Masterson has already advanced and secured for us in his own name and out of his own funds large sums of money, which have been expended in material for said work and labor performed thereon;

"And Whereas, we made and entered into a contract with the said H. Masterson on June 1, 1903, wherein it is provided that out of the net profits arising from said work we are to receive a certain proportion thereof, after the said H. Masterson had first received the amount agreed on in said contract of June 1, 1903, which is hereby annulled;

Now, therefore, in consideration of the premises aforesaid, and the release of all liability on the part of said Downey & Co. on the liabilities aforesaid, we have this day sold, transferred, conveyed and assigned, and do by these presents sell, transfer, convey and assign unto the said H. Masterson and his heirs and assigns the two contracts we have with the city of Beaumont, Texas, the one for the paving and the other a sewerage contract, being the only contracts we have with the said city of Beaumont, and we hereby subrogate him, the said H. Masterson, to all of our rights, remedies, emoluments, and pay in bonds, money or other thing of value, arising out of, incident or pertaining to said contracts, either or both of them. And we hereby authorize and instruct the said H. Masterson, or anyone authorized by him so to do, to receive and receipt for, from the treasurer of the city of Beaumont, or any individual or corporation in anyway indebted to said firm of H. W. Downey & Co., composed of H. W. Downey and George B. Kelley, any and all such indebtedness, of whatever the same may consist, and his receipt or the receipt of his duly authorized agent shall forever be of binding force and effect upon us, our heirs, executors and administrators, and we hereby fully authorize and empower the said H. Masterson to use and sign the firm name of H. W. Downey & Co. to any and all instruments, vouchers, orders, checks and documents of every kind, deemed by him proper to be signed in furtherance of or in connection with said work, or the sale of any of the paving or sewer bonds of said city of Beaumont.

"Witness our hands this the 2d day of October, 1903.

"H. W. Downey & Co.,
"H. W. Downey,
"Geo. B. Kelley.

"Witness:
        "H. A. Perry,
        "B. I. Guinn.
    "I agree to the foregoing.

"H. Masterson."

Masterson thereupon took charge of the work and under a modification of the contract with the city completed it. Masterson's total loss in sums which the firm were unable to repay him was about $34,000.

In view of the construction placed upon the first contract with Masterson by the parties thereto and their conduct following its execution, we find that neither of the parties had any purpose to form a partnership with Masterson or to include him as a member of the firm.

The advances made by him were regarded as a debt to be repaid with interest and Masterson's stipulated share in the possible profits was intended to compensate him for all he undertook to do in behalf of the firm.

On the 19th of June, 1903, Downey & Co. ordered from appellants the bill of goods for the value of which this suit is brought. The goods were shipped and used by Downey & Co. in the construction work prior to the execution of the last contract between Downey & Co. and Masterson.

Appellants did not know Masterson in the transaction and the goods were not sold on the faith of his connection with the firm. There was no holding out and no other element of estoppel in the premises. Masterson did nothing under the contract of June, 1903, which in practical effect impaired any fund to which appellant had the right to look for reimbursement.

We are inclined to the opinion that in view of the principle decided in Buzard v. First Nat. Bank, 67 Texas, 83, the facts do not constitute Masterson a partner.

In view, however, of Cothran v. Marmaduke, 60 Texas, 372 (which appears neither to have been expressly overruled nor distinctly modified) and of Dilley v. Abright, 19 Texas Civ. App., 489, and Rahl v. Parlin, 64 S. W. Rep., 1007, we have concluded not to decide the case.

Exercising our general right to certify, we respectfully propound for your decision the following question:

Do the facts stated constitute Masterson a partner in the firm of Downey & Co. as to the appellants?

We answer the question in the affirmative.

If one person advances funds, and another furnishes his personal services and skill in carrying on the business and is to share in the profits, it amounts to a partnership. It would be a valid partnership, notwithstanding the whole capital was in the first instance advanced by one partner, if the other contributed his time and skill to the business, and although his proportion of gain and loss was to be very unequal. It is sufficient that his interest in the profits be not intended as a mere substitute for a commission, or in lieu of brokerage, and that he be received into the association as a merchant and not an agent." (Goode v. McCartney, 10 Texas, 193; Ball v. Britton, 58 Texas, 57.)

The following condensed statement of the facts shows that this case comes within the rule announced, and that Masterson was a partner with Downey & Co.: Downey and Kelley had two contracts with the city of Beaumont for the construction of paving and sewerage for that city, which it was estimated would yield a profit of $53,000. The city

required a bond in a large amount from Downey and Kelley, which they were not able to make. The contractors also needed $17,000 to turn over to the city of Beaumont to enable the city to sell its bonds at par and $10,000 in cash with which to begin operation. Masterson agreed to furnish the bond required by the city and to furnish or secure the $17,000 necessary to be turned over to the city, also $10,000 cash and as much more as might be necessary for the completion of the work. Downey and Kelley agreed to give their time and skill to the prosecution of the work and, when all debts were settled and 8 per cent interest paid to Masterson for the money furnished by him, the net profits, if any, were to be divided by first giving to Masterson $12,500, then to Downey and Kelley $25,000 if there should be so much profit on the contract. If the profits exceeded $37,500 then Downey and Kelley were to receive two-thirds of the excess. To state the facts leads to the conclusion that Masterson was a partner in that enterprise. Each of them participated in the net profits of the business and neither of them received it for services rendered as the agent of the other.

This case is distinguishable from Buzard v. Bank, 67 Texas, 83, in these respects. Buzard employed Pennington and furnished him with money to buy cattle, and, for his services, Pennington was to receive a part of the profits of the business. Pennington was distinctly an agent of Buzard. Masterson put his credit and money into the Beaumont contracts against the skill and services of Downey and Kelley, who proceeded as contractors with Beaumont to construct the work. Downey and Kelley were under no obligation to repay to Masterson the money advanced by him. Masterson took the chances on success for the return of his money and interest thereon. Downey and Kelley were to receive each one hundred dollars per month as advances, to be deducted from their share of the profits. Masterson was not to receive his share of the profits as compensation for the use of his money, nor were Downey and Kelley to receive their share as payment for services but each received the profits as fruits of the joint enterprise, that is as profits, which made them partners.