BIVINS et al. v. PROCTOR et al.

No. 2664.

Court of Civil Appeals of Texas. El Paso.

April 21, 1932.

Rehearing Denied May 12, 1932.

W. R. Smith, Jr., of Odessa, and Underwood, Johnson, Dooley & Simpson, Vance Huff and James R. Tolbert, all of Amarillo, for appellants.

Whitaker & Peticolas, of El Paso, Haag & Stubbeman and J. M. Caldwell, all of Midland, and Goree, Odell & Allen, of Fort Worth, for appellees.

HIGGINS, J.

This is a suit by appellants as the legal representatives of the estate of Lee Bivins, deceased, against the surviving members of an alleged partnership composed of Lee Bivins, Foy Proctor, and Leon Goodman for an accounting and contribution to losses sustained by the Bivins estate in the partnership venture.

The enterprise in question was a cattle buying and selling venture as later more fully stated. The defendants Proctor and Goodman filed separate answers, each denying under oath the partnership alleged. They further pleaded that in the venture Bivins was to furnish the capital and defendants their skill, time, and service, and as compensation therefor they were to each receive one-third of the profits, if any, and as to the capital advances made by Bivins he was to be reimbursed from the proceeds of sale of the cattle, and that they were not obligated to reimburse Bivins for any loss of his capital investment.

Bivins died January 17, 1929. Thereupon Proctor and Goodman, as surviving partners, proceeded to liquidate the affairs of the firm. Prior to the final liquidation Proctor withdrew from further connection therewith by agreement with Goodman. Proctor also set up this withdrawal and a release, and pleaded that it was done with the consent and approval of plaintiffs, and he was thereby released from liability upon the claim now asserted; that Goodman agreed to hold him harmless, and prayed for judgment over against Goodman for the amount, if any, which might be recovered of him by plaintiffs. He alleged that at the time of his withdrawal and the release, the assets of the firm were then of value more than sufficient to pay all claims and reimburse the Bivins estate for the capital advanced by Bivins prior to his death and by such representatives subsequent thereto.

The pleadings are voluminous. The foregoing statement thereof will suffice to outline the nature thereof.

The evidence leaves no doubt the partnership relation existed. The firm name was Bivins, Proctor & Goodman. The partnership contract was not reduced to writing. Bivins is dead, and under the statute Proctor and Goodman were not competent to testify as to its terms. Therefore the nature and terms

of the contract must be ascertained from the correspondence between the parties and other facts and circumstances reflected by the evidence.

Bivins lived in Amarillo. He was a cattleman, and operated on a large scale. He was able to command capital in large amounts. His credit seems to have been excellent.

Proctor and Goodman lived at Midland. They were partners in the cattle business under the firm name of Proctor & Goodman. Apparently they were operators upon a modest scale. Bivins appears to have owned or had under contract in the fall of 1928 a large number of cattle. Proctor and Goodman were experienced cattle men, and in a position to acquire pasturage in the Midland territory and look after and market cattle that might be placed upon such pasturage. The record does not at all disclose the tentative contract between Bivins on the one part and Proctor and Goodman on the other part. It is clear the parties did not reach a definite understanding as to their rights and interests until January, 1929. At that time practically all of the cattle had been shipped to and placed upon the range in the Midland section.

On January 2, 1929, Goodman wrote Bivins as follows:

"It seems as if there was so much to do the short time you were here Monday that we did not get to know just how you preferred to handle the cattle being carried by Bivins, Proctor & Goodman.

"After thinking and talking the matter over with Foy we concluded that we preferred to handle the cattle with you as a partner, and you can know that we will do everything possible, not only to sell the cattle high, but to handle them at the lowest possible cost so that we can have a maximum of profit. You can know we are going to do the very best we possibly can.

"If it is agreeable to you we would prefer to handle these on a basis of one-third (⅓) around, and also any others that we might buy here, with your approval, on the same basis.

"If this is not satisfactory, of course, we will handle them as you determine, but if it is satisfactory we would like to do it on this basis.

"Foy and I are both going to look at the Hightower calves and if they are long ages now on the ground as we anticipate and it looks like the average calf would be much longer in age than the general run in this country, unless you advise to the contrary, we will contract them, keeping the forfeit down to the very lowest that would be acceptable.

"We are to look at the cattle Friday, therefore, if you have any contrary instructions please wire, also at your leisure let us know if this one-third basis above discussed is not satisfactory."

On the next day Bivins wired Proctor and Goodman: "One Third interest proposition in your letter satisfactory to me but not interested Hightower calves at this time account finances."

And on January 4th Bivins wrote Goodman as follows:

"Just received your letter of January 2nd and wired you I would not be interested in the Hightower Calves at this time on account of finances.

"The arrangement suggested in your letter, that is yourself and Mr. Proctor to have a two-thirds interest and myself one-third interest in the cattle is satisfactory. Should you want to buy my one-third, I am open for a proposition.

"Just at this time, my financial condition, account buying so much cake and paying out so much for pastures and other overhead expenses, will not permit of my buying more cattle until I can make a turn."

The issues submitted and answers returned read:

"Special Issue No. 1: Do you find from a preponderance of the evidence that Leo Bivins, Leon Goodman and Foy Proctor engaged in the cattle transactions in question with the intention, understanding and agreement that Leon Goodman and Foy Proctor should share in any losses, if any, as well as any profits, if any, that might result from said transactions? Answer Yes or No."

Answer: "No."

"Special Issue No. 2: What do you find from a preponderance of the evidence was the total loss sustained in the cattle transactions in question in this suit? Answer by stating the amount in dollars and cents, if any."

Answer: "$181,357.01."

"Special Issue No. 3: Do you find from a preponderance of the evidence that the plaintiffs by word, act or conduct agreed that the defendant, Leon Goodman, might release the defendant, Foy Proctor, from all liabilities, if any, on which the plaintiffs now seek to recover from said defendant, Foy Proctor? Answer Yes or No."

Answer: "No."

(The fourth not answered and need not be stated.)

"Special Issue No. 5: At the time plaintiffs received notice, if you have found that plaintiffs did receive notice, that the defendant Foy Proctor has been released by the Defendant, Leon Goodman, if he was so released, then was the value of the assets on hand as great as the capital investment plus all accrued charges against the cattle transactions? Answer yes or no."

Answer: "Yes."

826

Upon the findings, judgment for defendants was rendered.

Appellants submit numerous assignments and propositions directed against the action of the court in submitting the first issue and the refusal of peremptory charges directing a finding in plaintiff's favor against the defendants for their proportionate share of the capital loss in the venture sustained by the Bivins estate. They all proceed upon the theory that under the evidence the right of contribution is established as a matter of law.

In Whitcomb v. Converse, 119 Mass. 38, 20 Am. Rep. 311, it is said:

"Whether a loss of capital is a partnership loss, to be borne by all the partners, depends upon the nature and extent of the contract of partnership.

"If, as is not unfrequently the case in a partnership for a single adventure, the mere use of the capital is contributed by one partner, and the partnership is in the profits and losses only, the capital remains the property of the individual partner to whom it originally belonged, any loss or destruction of it falls upon him as the owner, and, as it never becomes the property of the partnership, the partnership owes him nothing in consideration thereof. Story Part. §§ 27, 29. Heran v. Hall, 1 B. Mon. 159 [35 Am. Dec. 178]."

20 R. C. L. at p. 930, says: "As a general rule where one partner furnishes the capital and another labor there is no right of contribution in favor of the former against the latter for the losses incurred in the conducting of the affairs of the partnership. In the absence of any agreement on the part of a partner to advance a given share of the capital needed to carry on a joint speculation, or any promise to repay the plaintiffs for their advances, no recovery may be had since from the mere fact that one partner advanced the whole of the capital the law will not imply a promise by his co-partner to repay any of it during the continuance of the partnership. Hence, if on the dissolution of a firm there is a loss of capital after all debts are paid the partner advancing the capital or his personal representatives cannot compel the other partners to contribute toward such loss. Where, however, by the terms of a partnership agreement all of the partners are bound to contribute to the capital equally, and the firm is dissolved after its business had resulted in a loss, a partner advancing the capital may bring a bill in equity against his associates for their shares."

The note in Ann. Cas. 1916D, at page 825, says: "As a general rule where one partner furnishes the capital and another labor there is no right of contribution in favor of the former against the latter for the losses incurred in the conducting of the affairs of the partnership. Heran v. Hall, 1 B. Mon. (Ky.) 159, 35 Am. Dec. 178; Meadows v. Mocquot,

110 Ky. 220, 61 S. W. 28, 22 Ky. Law Rep. 1646; Baker v. Safe Deposit, etc., Co., 90 Md. 744, 45 A. 1028, 78 Am. St. Rep. 463; Manley v. Taylor, 50 N. Y. Super. Ct. 26, following Hasbrouck v. Childs, 16 N. Y. Super. Ct. 105; Johnston v. Steele, 48 Tex. Civ. App. 335, 107 S. W. 631. In Manley v. Taylor, supra, the court said: 'There has been some difference of opinion among jurists, as to the rule of equity to be applied in these cases, and the question was discussed with great care and erudition by Judge Hoffman in Hasbrouck v. Childs, 16 N. Y. Super. Ct. 105. The opinion sustained by the weight of authority, is that when one member of a partnership puts money into the business, but gives to it no time or attention, and expends upon it no skill or labor, while the other partner contributes no money, but does contribute his time, attention, labor and skill to make the business productive, that his contribution of labor, etc., is to be set against the money contribution of the other; that in case of failure, his loss of labor, etc., is to be set against the money loss of the other, and that each loss is to be borne exclusively by the loser without any right to contribution from the other. This rule is not inflexible, and each case must be decided according to its own circumstances, and the intention of the parties to be deduced therefrom; and these were questions which it was within the province of the referee, in the case at bar, to determine on the evidence before him.'"

The note in L. R. A. 1917E, at page 879, says: "Closely connected with the application of the above treated general rule to the effect that the partner advancing the money to carry on the partnership business becomes as between the partners a creditor of the partnership to the amount of the capital advanced is the question as to who must bear the loss in case there is a depreciation or loss of capital assets, and more specifically, whether the partner furnishing the services only can be compelled to contribute to make up such losses. Upon this phase of the question the general rule is that although the partner advancing the partnership capital is entitled to repayment for the sum or sums advanced, the liability therefor is that of the firm and not of the partner furnishing merely his services, especially if the partner from whom the money comes contributes only the use of, and still keeps his property in, the principal, in which case the partnership property is regarded as made up of the labor of one party and the use of the other's money. In other words, upon a loss of the capital the partner who contributed it is not entitled to recover any part thereof from the partner who contributed only his services, unless the parties have contracted for contribution from the working partner in case of loss of, or depreciation in, assets, or the partner from whom the money comes contributes the property of

the money as distinguished from the use only of it."

We quote from the syllabi of Baker v. Safe D. & T. Co., 90 Md. 744, 45 A. 1028, 78 Am. St. Rep. 463, as follows: "Whatever may be the legal liability of partners to outside persons, as among themselves a disproportionate interest as to profits and losses may be agreed on. Hence, if one partner supplies all the capital of the firm, and the others furnish their time, services, and skill, under an agreement that they shall be entitled only to a share of the profits after payment of debts, but with no understanding among the parties that losses shall be made good by the joint contribution of all the partners, any impairment of the capital must, upon liquidation of the business, be borne alone by the partner who supplied it."

See, also, Meadows v. McQuot, 110 Ky. 220, 61 S. W. 28, 22 Ky. Law Rep. 1646.

■ The courts of this state have applied the rule that, where one partner furnishes the capital and another his labor, there is no right of contribution in favor of the former against the latter for capital losses incurred in the partnership venture. Simpson v. Fulcher (Tex. Civ. App.) 45 S.W.(2d) 1012; Johnston v. Steele, 48 Tex. Civ. App. 335, 107 S. W. 631.

In the case at bar Bivins furnished all of the capital. Proctor and Goodman furnished their skill, service, and time in procuring pasturage, caring for and marketing the cattle. They made no capital advances, though to some extent they seem to have pledged their credit before the death of Bivins. It is clear the parties all contemplated sharing equally in the profits, if any, after all expenses were paid and Bivins reimbursed for his capital advances. No agreement is definitely shown to reimburse Bivins for his loss of capital in case of such loss.

The authorities which recognize a right of contribution opposed to that indicated above seem to proceed upon the theory which is perhaps best stated in Whitcomb v. Converse, supra, as follows: "But where, as is usual in an ordinary mercantile partnership, a partnership is created not merely in profits and losses, but in the property itself, the property is transferred from the original owners to the partnership, and becomes the joint property of the latter; a corresponding obligation arises on the part of the partnership to pay the value thereof to the individuals who originally contributed it; such payment cannot indeed be demanded during the continuance of the partnership, nor are the contributors, in the absence of agreement or usage, entitled to interest; but if the assets of the partnership, upon a final settlement, are insufficient to satisfy this obligation, all the partners must bear it in the same proportion as other debts of the partnership."

■■ There is evidence which supports the view the partners contemplated that the cattle furnished by Bivins should become the property of the partnership, but we do not regard such evidence as conclusively so showing. Even if it did so show, we would not regard it as conclusive in support of the right of contribution here asserted. The matter is controlled by the partnership agreement which in this case must be determined by all the correspondence, what the parties did and all of the facts and circumstances reflected by the evidence. The burden rested upon appellants to show that under the partnership agreement the right of contribution existed, or to show a state of facts from which such right would be necessarily implied. In our opinion, the evidence does not conclusively so show, and the issue was for the jury to determine. Nor did the court err in placing upon appellants the burden of showing the affirmative of Issue No. 1.

■ Issue No. 1 was so framed as to permit the jury to answer the same "Yes" or "No" in the light of all the evidence, and, as indicated above, the burden was upon appellants to show an agreement to share losses or a state of facts from which such agreement might be implied. Issue No. 1 was broad enough to submit both phases, and the burden of showing the affirmative rested upon appellants. Other obligations urged against the charge upon the burden of proof present no error.

■ Appellants' requested issues Nos. 1 and 2 were evidentiary upon the issue of what the understanding and agreement of the parties was. For this reason, the refusal of such requested issues presents no error.

A number of other objections to issue No. 1, as submitted by the court, are urged. They relate to its form, and we think show no error.

■ Some objections are also urged against issue No. 5. This issue relates to the additional defense presented by Proctor. Issue No. 5 becomes immaterial in view of the first finding. Error, if any, in the issue is for this reason harmless.

The rulings of the court upon evidence and of alleged misconduct of the jury present no error.

Affirmed.