## PAGGI et al. v. QUINN.
### No. 5600.

Court of Civil Appeals of Texas. Amarillo.

March 20, 1944.

Rehearing Denied April 24, 1944.

790

John H. Benckenstein and Jack M. Moore, both of Beaumont, for appellants.

Steve M. King, George M. Sonfield, and Barnes & Barnes, all of Beaumont, for appellee.

STOKES, Justice.

On January 29, 1917, Ed Paggi, B. E. Quinn, and W. G. Turner entered into a written contract of partnership for the expressed purpose of buying and farming the place known as the John Norton place in Jefferson County, including the teams, tools, implements, and machinery belonging to Norton and used by him for farming the land. It appears that Norton did not own the land in fee but had it under lease, and the consideration to be paid to him, as provided by the contract, was the sum of $12,000. The interests owned by the respective partners in the partnership were: Paggi 5/10, Quinn 4/10, and Turner 1/10. In the fourth paragraph it was provided that Paggi would furnish all the money, or secure a loan for the partnership, to purchase the Norton property and the other parties agreed to pay eight per cent interest, payable annually as it accrued, on the amount of money required to pay for their respective interests. In the fifth paragraph it was provided that, if the parties should determine to run livestock on the farm, Paggi would also furnish money to purchase them, this money to be furnished on the same terms as the money furnished by him to purchase the Norton lease, and the interests in the stock were to be shared in the same proportions. It was provided that Turner would be in active charge of the farm and control the policies of its management as to employing labor, planting, watering, and harvesting the crops, except in matters about which he was specifically directed by the joint action of the other partners, and Turner was to receive $75 per month from the partnership as a salary. The eighth paragraph of the contract provided that the earnings of the business should be appropriated first to meeting the obligations of the purchases and operation of the business, and the residue, if any, should be divided among the partners in proportion to the shares owned by them. It was also provided that the parties contemplated leasing other lands in the vicinity and also to engage in the business of irrigating crops of others for hire, and should it engage in such other enterprises they would be financed, shared and operated in the same manner as the Norton lease. The partnership was to continue for a period of five years unless sooner dissolved by mutual consent. It appears that the land was to be used principally as a rice farm and incidentally to raise and pasture livestock.

The partnership was known as B. E. Quinn & Company, and it appears from the pleadings that at sometime after the contract was executed, appellee Quinn purchased the interest of Turner and thereby became an equal partner with Ed Paggi. Paggi and Quinn organized another partnership on the same basis, known as Paggi-Quinn Investment Company. The nature of its business, however, is not shown. Ed Paggi died on January 30, 1921, and left surviving him the appellants, Bertha D. Paggi, his wife, and Charles Paggi, a brother, who were appointed executrix and executor, respectively, of his estate by his last will and testament, which was duly probated and they qualified as such. On December 15, 1926, this suit was filed by them as representatives of the estate of Ed Paggi, deceased, against the appellee, B. E. Quinn, in the nature of a suit for an accounting of the partnership affairs. They alleged that, pursuant to the contract, the partnership acquired rice lands as contemplated, some livestock, and farming implements and machinery, and that Ed Paggi furnished all of the money needed in connection with such acquisition. The petition alleged that when Ed Paggi died, the two partnerships were indebted to numerous parties for money and credits theretofore secured and were also indebted to Ed Paggi for monies advanced by him from time to time to the partnerships and that upon his death the affairs of the partnerships were in such condition that the same could not be properly liquidated, whereupon appellants and appellee entered into a contract in which it was agreed that Charles Paggi and appellee Quinn would act jointly in all matters looking to the final liquidation of both of the partnerships. It was further alleged that under this last contract the busi-

ness affairs of the partnerships were substantially, but not altogether, wound up and that the amounts advanced by Ed Paggi for the use and benefit of the partnerships were never repaid to him nor to his representatives and, there being no partnership assets remaining after the death of Ed Paggi to discharge the indebtedness of the partnerships to third parties, it became necessary for appellants, as representatives of the estate of Ed Paggi to advance, from time to time, additional monies to pay the obligations of the partnerships to third parties, and that those amounts had not been repaid to the estate. It was alleged that appellee was liable to the estate of Ed Paggi for one half of the money advanced by Paggi during his lifetime and by the appellants, as his representatives, after his death, for the purpose of paying the claims of third persons against the partnerships; that both of the partnerships were dissolved by the death of Ed Paggi; and that, although final settlement and general accounting were due and had been demanded, they had been refused by the appellee. It was alleged that a proper accounting would show there was due and owing to the Paggi estate by the partnerships a large sum of money, approximating $50,000, for half of which appellee was liable to the estate, and appellants prayed for the appointment of an auditor and a receiver to take charge of the affairs of the two partnerships and for judgment against appellee for any amount an accounting might show was owing to the estate by him, and offered to pay any amount that might be shown to be due by the estate to appellee.

Appellee urged a general demurrer and special exceptions to the petition, which were sustained by the court and, appellants declining to amend, the suit was dismissed. Appellants duly excepted, gave notice of appeal, and perfected an appeal to the Court of Civil Appeals of the Ninth Supreme Judicial District, 'and the case was transferred to this Court by an order of the Supreme Court equalizing the dockets of the Courts of Civil Appeals.

Appellants present five assignments of error, all of which pertain to the action of the court in 'sustaining the general demurrer and special exceptions, and it will not be necessary, therefore, to discuss them separately. The exceptions and order of the court indicate they were sustained because, according to appellants' pleading and the partnership contract, a copy of which was attached thereto, there was no personal liability on the part of appellee for contribution nor for repayment of advances made by Ed Paggi to the partnerships, nor for any losses sustained, because the contract of partnership provided that Paggi should furnish all needed monies for the partnerships and appellee was to participate only in the profits, if any, and for the same reason appellee was not liable for any portion of the partnership obligations paid by the representatives of Paggi's estate after his death.

The principal contention presented by the briefs pertains to the original monies advanced by Ed Paggi to purchase the Norton lease, implements, and livestock in connection with it, and other advances of like character. While the petition alleges that another partnership was created between the same parties and that Paggi furnished money to it as well as the former partnership, as provided by the articles of partnership, there are no allegations setting forth the amounts so furnished or the nature of the business conducted by the second partnership. We assume from the pleadings that the money furnished for the second partnership was of the same nature as that furnished to the first partnership, because they both seem to have been based upon the same articles or contract of partnership.

Appellants assert that the general rule governing partnerships should apply and that their suit for an accounting should have been entertained by the court for the reason that, regardless of how the capital of a partnership is formed, if it is, in reality, a partnership, a special agreement is required to prevent a community of interests in the property and profits and common liability for the losses. In other words, that, under the contract or articles of partnership, the parties were equally interested in the capital and property acquired by or in behalf of the partnerships and there was no stipulation in the contract by which appellee was relieved from the responsibilities and obligations of a partner in an ordinary partnership. On the other hand, appellee contends that, under the terms of the contract, Ed Paggi furnished to the partnerships only the use of the money as its capital and did not furnish the money itself; that the title to the money furnished by him was never acquired by the partnership but remained the property of Ed Paggi and was contributed

by him to the use of the partnerships merely to offset the personal services contributed by the appellee. He contends therefore, that when the partnerships were dissolved by the death of Ed Paggi, the capital that had been furnished by Paggi to the partnerships having been extinguished by losses, the loss became a personal one and not a loss by the partnerships, and that the action of the court in sustaining his demurrer and exceptions was therefore correct.

It is established by many decisions of the courts in this and other jurisdictions that the very nature of a partnership involves community of interests in the common enterprise, its operation for the joint account of the partners, the right of each to share as a principal in the profits, and the responsibility of each for the losses in the event it proves to be a failure. When it is shown that a partnership has been created and no exception to the general rule of liability of the partners appears, a community of interests in the capital is shown prima facie and the law implies that each owner will participate in the losses. Where it is sought to relieve any of the members from loss of capital in the partnership, a special contractual stipulation to that effect is essential. Bivins v. Proctor, 125 Tex. 137, 80 S.W.2d 307.

The contract entered into by the parties in this case contains no stipulation under which appellee would be relieved from his general liability for the debts and obligations of the partnerships, whether they were due to the original creditors or to one of the partners who advanced the money to discharge them. It is a familiar provision of the law of partnerships that advances of money to the firm by a partner to discharge partnership obligations are nothing more than loans to the partnership, and the party advancing them becomes a creditor of the partnership. Buie v. Kennedy, 164 N.C. 290, 80 S.E. 445.

The petition of appellants alleged that when the partnerships were dissolved by the death of Ed Paggi, they were indebted to third parties and, there being no funds or assets of the partnerships to satisfy these claims, it became necessary for appellants, as representatives of the estate of Ed Paggi to advance, from time to time, additional monies to pay the obligations to third parties and that these amounts have not been repaid to the estate. The pleading does not state the amounts of these items but, under the rule of law governing partnerships, above mentioned, appellee is liable to appellants for his half of them, and for the purpose of ascertaining the amounts and procuring a judgment against appellee for his portion of them, appellants are entitled to an accounting and, in our opinion, the court erred in sustaining the general demurrer and special exceptions.

Neither the nature nor the amounts of monies alleged to have been advanced by Paggi during his lifetime were specified in the petition and it is not clear whether the allegations refer to the money advanced by Paggi under the partnership contract to pay for the Norton and other leases on land or whether they were operating expenses and indebtedness incurred in the management of the affairs of the partnerships after they were organized. Both parties treat them in their briefs as referring to the original contributions made by Ed Paggi under the contract to pay for the lease, livestock, machinery, tools, and other property acquired by the partnerships when they were organized, and we are warranted, therefore, in assuming that these original contributions are the items referred to in the pleading.

As we have said, it is the general rule that, in the absence of an agreement to the contrary, partners must bear the losses in the same proportion as they are to receive the profits of a partnership. There is no doubt, however, that partners may stipulate for a variance of the rule as between themselves and it is always necessary to look to the contract entered into between them to ascertain the exact liability the parties, respectively, have assumed. The original contract of partnership here involved provided that "the consideration which the parties have agreed to pay to the said Norton for his said lease, teams, tools, implements, and machinery belonging to the said Norton and used in connection with said lease is $12,000." Paggi agreed to furnish all the money or secure a loan for the partnership to purchase the Norton lease and equipment and the other parties to the contract agreed to pay eight per cent interest on the amount of money which was required to pay for their respective interests.

Appellants contend that the money itself, although furnished by Ed Paggi

constituted the capital of the partnership and that, therefore, the general rule, to the effect that where the capital is lost each partner is responsible for his portion of it, applies. We cannot agree with appellants in this contention. The contract plainly provided that the partnership was formed for the purpose of buying the farm of John Norton and operating it. The pleading shows they did purchase the Norton lease and equipment, and the lease and equipment, not the money advanced by Ed Paggi, therefore constituted the capital of the partnership. That this is the proper construction of the contract is shown by the further provision that the other partners would pay eight percent interest on the amount of money furnished to the partnership by Paggi to pay for their interests. Since the money did not constitute the capital, appellee was not liable to the appellants for his proportion of the money advanced by Ed Paggi upon the theory, as contended by them, that each partner is liable for his proportion of lost capital, and if this were the only issue raised by the pleadings, the action of the trial court in sustaining the demurrer and exceptions would have been correct.

The contention of appellee is that he is not liable for any portion of the money advanced to the partnerships by Ed Paggi, because it is affirmatively shown by appellants' pleadings that appellee was to furnish his personal services and that Paggi was to furnish to the partnerships the use of his money, but not the actual property in it. His contention is based upon the doctrine announced by such cases as Heran v. Hall, 1 B.Mon., Ky., 159, 35 Am.Dec. 178. We do not agree with him in this contention. Those cases are based upon partnership contracts which the courts interpreted as providing that the use of the capital of the partnerships was furnished by one of the partners, as distinguished from the actual property in the capital. In the Heran case, the parties formed a partnership for the purpose of buying corn in Illinois and Missouri and shipping it to New Orleans where it would be sold. Heran furnished the money for the purchase of the corn, and Hall furnished his services in locating, buying, shipping, and selling it. The court observed that, while it was not perfectly satisfied that the parties did not intend to be partners in the capital, "the corn," and the losses as well as the profits, it was inclined to concur with the Chancellor in the deduction that the money capital was furnished by Heran for himself alone and not merely advanced equally for himself and Hall.

In most of the cases involving the use of capital furnished by one of the partners, the capital so furnished was property, such as buildings, livestock, and the like. It is, no doubt, true that the use of money could be so furnished as the capital of the firm, such, for instance, as a partnership formed for the purpose of loaning money or where property is purchased with the money of one of the partners and the ownership placed in him and retained by him as his property; but the contract here involved plainly provides that the capital of the partnership should be the lease and that it was being acquired, not by Paggi, but by the partnership. We think it is clear, therefore, that the money furnished by Ed Paggi did not constitute the capital of the partnerships and that Quinn can not be excused from liability for its loss upon that theory. His liability as a partner for his portion of the original funds furnished to the partnership by Ed Paggi depends upon the intention of the parties and that intention is not revealed by the contract. It merely provides that Paggi would furnish all the money or secure a loan for the partnership to purchase the Norton lease and equipment and that the other parties would pay eight per cent interest on the amount required to purchase their respective interests. It does not definitely appear from the contract that the money furnished constituted a loan and the contract makes no provision for personal liability for its repayment by the partnership or either of the partners. It provides that the earnings of the enterprise should be devoted, first, to meeting the obligations incurred in the purchases and operation of the business and the residue divided among the partners, but no provision is made for losses. It is not alleged that the partnership executed to Paggi any notes or other obligations nor that any credit in favor of Paggi or debit against the partnership was entered on the books. There is no provision in the contract that the earnings of the enterprise were the only source upon which Paggi would depend for repayment of the money advanced by him and, unless there was a contract, express or implied, by which appellee was relieved from the ordinary liabilities of a partner, or it is shown that such was the intention of the parties at

the time the contract was executed, appellants were entitled to an accounting. Since these things were not revealed by the contract nor by the petition, they became questions of fact and the court erred in sustaining the exceptions.

The judgment will be reversed, and the cause remanded.

## On Motion for a Rehearing.

■ Appellee vigorously contends in his motion for a rehearing that a proper interpretation of the partnership contract is that Ed Paggi furnished only the use of his money, which constituted the capital of the partnership, and that at no time did the partnership acquire the title or ownership of such money. He contends that, therefore, we erred in declining to apply the rule of law to the effect that where one partner furnishes to the partnership only the use of his money or property, retaining title thereto, and does not furnish to the partnership the corpus of the property or money, in the event the capital is dissipated by losses the other partner is not liable to him for the loss of capital so furnished. There is no doubt that where the contract of partnership so provides and the property or money is furnished under such an arrangement, the partnership acquiring nothing but potential profits, appellee's contention is correct. But in this case the partners did not see fit to enter into such a contract. As stated in the original opinion, the money furnished by Paggi did not constitute the capital of the partnership. The first clause of the contract provided that "the parties have formed themselves into a partnership for the purpose of buying and farming the place known as the John Norton place in Jefferson County, * * *." The second clause provided that "the consideration which the parties have agreed to pay to the said Norton for his said lease, * * * is $12,000.00." These provisions of the contract admit of only one interpretation, and that is that the partnership was organized for the purpose of purchasing and operating the John Norton lease, and such other leases or property as might subsequently be acquired, and that it was in contemplation of the parties that the partnership, not Ed Paggi, would purchase the John Norton property. It is true that Paggi agreed to furnish the money to pay the consideration, but there is no intimation in the contract that the lease and other property were to belong to him. The case

is not governed, therefore, by the rule announced in Johnston v. Steele, 48 Tex.Civ. App. 335, 107 S.W. 631, 632, and others of like import, as contended by appellee. The contract involved in that case plainly provided that "Johnston is considered the owner and controller of this land and sheep, Steele in charge." The land and sheep constituted the property from which the contemplated profits would be derived and divided equally between the partners after the expenses were paid, and neither of them was ever acquired by the partnership. They remained the property of Johnston and he sought to recover from Steele half of the loss incurred in the operations, which evidently included loss of some of the land or sheep. The holding of the court was to the effect that, inasmuch as Johnston, and not the partnership, was the owner of the land and sheep, he could not recover of Steele any portion of their loss. From the opinion in that case it is clear that Johnston furnished to the partnership only the use of his land and sheep, against the labor and personal services of Steele, and that the potential profits were all that was owned by the partnership. In that kind of case the law is well established that the partner furnishing only the use of his money or property must stand the loss of such of that money or property as may be incurred in the operation of the business. The distinction is well expressed by Judge German for the Supreme Court in the case of Bivins v. Proctor, 125 Tex. 137, 80 S.W. 2d 307.

■ The further contention is insisted upon that appellee furnished his time, labor, and services in conducting and managing the affairs of the partnership and thus contributed his personal services over against the use of the money furnished by Paggi. The written contract was completely silent as to any duties appellee Quinn was to perform and, as far as the record reveals, he discharged none and was under no obligation to contribute anything until he purchased Turner's interest. Appellants alleged that, after the partnership was organized, Quinn acquired all of the rights of W. G. Turner under the contract and assumed all of his responsibilities thereunder. The contract provided that Turner would be paid $75 per month for his services and, upon acquiring his interests and assuming his responsibilities, Quinn became obligated to discharge the duties imposed upon Turner by the contract and be-

796

came entitled to the same remuneration which Turner was to receive. Upon the failure and dissolution of the partnership, appellee had therefore not lost the value of his services as contended by him. He was entitled to be paid the contract price for his services and the presumption is that he was paid for them. This is another feature which we think shows it was not contemplated by the parties that Paggi would merely furnish the use of his money against the labor and personal services of the appellee.

We find nothing in the motion which convinces us that we erred in our original opinion, and the motion will therefore be overruled.