**DAVIS v. GILMORE et al.**

No. 12335.

Court of Civil Appeals of Texas. San Antonio.

Dec. 5, 1951.

Rehearing Denied Jan. 9, 1952.

Aldrich & McDonald, Edinburg, for appellant.

Strickland, Wilkins, Hall & Mills, and J. M. Burnett, all of Mission, for appellees.

POPE, Justice.

This is an appeal from a joint and several judgment in favor of L. L. Gilmore and J. F. Gross as third party creditors against Joe E. Davis and Ralph Dillard. Judgment was rendered against them as partners for an unpaid balance for fuel furnished by appellees. Dillard has not appealed from the judgment, but Davis has appealed upon points urging that the items of the sworn account were not proved to be just and reasonable, and that no partnership as against a third-party claim existed between him and Dillard. This case was tried before the court and the trial judge has made and filed his findings of fact and conclusions of law.

Whether Davis and Dillard were engaged in farming as partners largely turns upon the construction of two contracts, similar in nature, except that they cover different tracts of land and provide for different crops and different proportions in which the two should share. Since every clause is important to the ultimate decision and the contracts are relatively short, one of them will be set forth in full:

"That Whereas Dillard has under farm lease, on a one-fourth (¼) crop rental basis from the owners thereof the following described property lying and being situated in Hidalgo County, Texas, to-wit: (Property here described.) And, Whereas, Dillard desires advances during the current year to enable him to make a crop on said land, and Davis has, and by these presents, does agree to advance to said Dillard all money reasonably necessary for planting, cultivating and harvesting the crops to be grown thereon:

"The said Dillard hereby convenants and agrees, in consideration of the premises and of the advances to be made by said Davis as aforesaid, as follows:

"(1) To plant said land to the full extent of the cotton allotment of 110 acres, to cotton, and the balance to whatever crops may be agreed upon by the parties hereto, and to cultivate said crops in a good and farmerlike manner, and to make full and complete accounting to Davis for all crops harvested therefrom, as and when harvested.

"(2) To pay to the said Davis, from the first proceeds of the crops harvested from said land, as and when harvested, all sums advanced by Davis hereunder.

"(3) After the payment to the said Davis of all advances made, to deliver to said Davis at Edinburg, Texas, one-third (⅓) of Dillard's full three-fourths (¾) tenants' share of said crops; and the said Ralph Dillard hereby bargains, sells and delivers

unto the said Joe E. Davis an undivided one-third (⅓) interest in and to Dillard's net profit from his full three-fourths (¾) tenant's share of the crop or crops to be grown on said land.

"(4) To gin all cotton grown on said land at Black-Davis Gin in Edinburg, Texas, unless otherwise directed by Davis.

"(5) To execute and deliver to the said Davis, each time money is advanced hereunder, promissory notes for and in such amounts of money so advanced, payable out of the said first proceeds of crops harvested.

"In consideration of the premises, and to secure the payment of said advances to be made by Davis hereunder, the said Ralph Dillard has bargained, sold and delivered and by these presents, does bargain, sell and deliver, unto the said Joe E. Davis, the full tenant's three-fourths (¾) share and interest of all the crops to be planted and grown on said premises during the year 1950; to have and to hold the same forever. Provided, however, that if the indebtedness above mentioned shall be fully paid as above provided, then this conveyance shall be null and void. But if said indebtedness, or any part thereof, is not paid and discharged as above stipulated, the said Davis, his heirs or assigns, shall have the right to take possession of the above described property, wherever the same may be found, and for that purpose to enter upon the above described premises occupied by said Dillard upon which said property, or any part thereof, may be found. And the said Davis, his heirs or assigns, having taken said property into possession, shall have the right to sell the same in the manner that personal property may by law be sold under execution, and apply the proceeds of said sale to the payment of the expense of said sale and to the discharge of said indebtedness in part or in whole, and the surplus, if any, pay over to the person entitled thereto."

The other additional controlling facts are that appellees delivered the gasoline and oil to the farms and they were used in the planting, cultivation and production of the crops. Only Dillard was billed for the merchandise. If the contracts create a partnership, Davis is liable on the account; otherwise the judgment should be reversed. Whether the contract is one of partnership or only of a creditor-debtor relationship between Davis and Dillard is the pointed matter before us.

The face of the contract reveals some evidence of an intent to create the relationship of a partnership and other evidences of a creditor-debtor relationship only. The contract reflects that Davis advanced some funds to Dillard and that Dillard agreed to repay those funds. The advances were evidenced by promissory notes, which are not before us, and they were secured by a mortgage on all of the future crops. The contract does not state that Davis has any duty as to losses. These features indicate a creditor or lending relationship.

No single fact may be stated as a complete and final test of partnership. Each case must rest on its own particular facts and the presence or absence of the usual attributes of a partnership relation. The earlier Texas rule indicated that profit sharing was the controlling test. Kelley Island Lime & Transport Co. v. Masterson, 100 Tex. 38, 93 S.W. 427; Cothran v. Marmaduke & Brown, 60 Tex. 370; Steger v. Greer, Tex.Civ.App., 228 S.W. 304; Foulke v. Brengle, Tex.Civ.App., 51 S.W. 519. We think it is now generally held that such a test is not all-inclusive and controlling. Fink v. Brown, Tex.Com.App., 215 S.W. 846; Freeman v. Huttig Sash and Door Co., 105 Tex. 560, 153 S.W. 122; Gardner v. Wesner, Tex.Civ.App., 55 S.W. 2d 1104. But the element of profit-sharing is important evidence sufficient as to third-party creditors to raise a presumption of partnership. Fink v. Brown, supra; Southern Surety Co. v. Texas Employers Ins. Ass'n, Tex.Civ.App., 2 S.W.2d 310; Eddingston v. Acom, Tex.Civ.App., 259 S.W. 948. The presumption may be aided or overcome by the presence or absence of other partnership attributes indicative of the intent of the parties.

The absence of an express provision obligating the parties to share in the losses is also important and indicates that

no partnership existed. Giddings v. Harding, Tex.Com.App., 267 S.W. 976; Paggi v. Quinn, Tex.Civ.App., 179 S.W.2d 789; Watson v. Edinburg Securities Company, Tex.Civ.App., 68 S.W.2d 644. But this feature too is not controlling. Bivins v. Proctor, 125 Tex. 137, 80 S.W.2d 307, Id., Tex.Civ.App., 49 S.W.2d 824; Sturdevant v. Hooper, Tex.Civ.App., 101 S.W.2d 379.

There are several things included in the contract which we think support the trial court's conclusion that a partnership existed. The contract gave Davis more than the right to share in the profits in a fixed proportion. The third paragraph was an outright sale to Davis of one-third of the profits. He thereafter was a joint owner along with Dillard of those profits. Sharing by force of a joint ownership is different from a contract which provides a suitable means of computing compensation or interest. Fink v. Brown, supra; Mangum v. Turner, Tex.Civ.App., 142 S.W.2d 951; Giddings v. Harding, Tex. Com.App., 267 S.W. 976.

The matter of control over the farming operations is additional evidence of the partnership. Fink v. Brown, supra. After the parties had by contract mutually agreed upon the crops to be grown, they agreed further that on those lands not planted in line with the cotton allotment, Davis would share equally in controlling the choice of crops. The fourth paragraph of the contract requires that the cotton be ginned at the Black-Davis Gin, and then provides that the only person who could excuse that provision was Davis, who possessed the power to direct Dillard to gin the cotton elsewhere. On the matter of ginning, Davis exercised complete control.

But a still more significant feature aids the presumption of partnership. The clause that required Dillard to execute promissory notes in favor of Davis each time he made an advance, and the final clause that granted Davis a mortgage on the entire crop to secure these advances, give an appearance of a creditor-debtor relationship rather than a partnership. But it will be seen from examination of the contract, that the promissory notes evidencing the advances were to be "payable out of the first proceeds of crops harvested." Nowhere in the contract is there any requirement that any part of Davis' advances be repaid from any source other than the proceeds of the crop. The contract does not require repayment of the advances in all events. Paragraph two of the contract expressly states that repayment will be made from the proceeds of the crops. The returns depended upon the success of the undertaking. Watson v. Edinburg Securities Co., supra. Instead of a contract by which the advances would be repaid in any event, and whereby Davis could look even beyond the success of the venture, as against the third party creditor, we think Davis by the contract manifested an intent to risk the return of his money on the success of the farming enterprise. Kelley Island Lime & Transport Co. v. Masterson, 100 Tex. 38, 93 S.W. 427. We find no duty to repay Davis in all events nor from any source other than the crop; and think that Davis and Dillard under the contract, each mutually took their chances on the success of the farming venture. The rule is well summarized in 68 C.J.S., Partnership, § 30 b, (3), p. 453. "The question whether or not the alleged loan is to be repaid is important. In order to constitute a loan the money advanced must be returnable in any event, and, if it is so repayable and constitutes a personal debt, there is no partnership. It is not a loan if repayment is contingent on the profits, since in such a case it is made not on the personal responsibility of the borrower, but on the security of the business; and, where the money is so risked in the business, it strongly tends to show that the contract was one of partnership, and not a mere loan. Liability for losses tends to show partnership, while the absence of such liability tends to show a loan."

Eddingston v. Acom, Tex.Civ.App., 259 S.W. 948, relied upon by the appellant, is not in analogy, since the obligation there was to be repaid in any event, but the due date was fixed at harvest time.

Whether the appellees proved their allegations of a sworn account is the other point in the case. The sworn account was

met by a sworn denial which required appellees to establish their account by legal and competent evidence independent of the aid of Rule 185, Texas Rules of Civil Procedure. J. E. Earnest & Co. v. Word, 137 Tex. 16, 152 S.W.2d 325; Interstate Minerals v. Harroun, Tex.Civ.App., 173 S.W.2d 547. All the elements of proof for an account were proved except that no evidence was adduced as to the justness and reasonableness of the charges on the items furnished by appellees. The absence of this proof is urged as a failure to prove a cause of action as alleged, and as found by the trial court. Appellees rely upon proof of an account stated, even though the cause alleged a sworn account. The evidence proved a stated account, at least insofar as Dillard was concerned, and this would, by reason of our conclusion that he was a partner with Davis, also bind Davis. Appellees delivered fuel to Dillard for use on the farms, and he or his representative signed each invoice which was itemized as to the quantity and the charges made. The deliveries continued over a period of eight months during which time Dillard made two substantial payments on the growing bill. The account was carried in Dillard's name only, and monthy statements were sent to Dillard. On several occasions appellees personally contacted Dillard for payment. Not only did he fail to protest these bills but on one occasion he gave the collector a note to take to Davis for the purpose of payment. Davis refused to make payment on the ground that he was not a partner and did not owe the bill. Deliveries commenced in December of 1949 and continued up through August 28, 1950. Suit was filed one month later.

This proof showed that the account was rendered to Dillard, and that it was retained without objection for a reasonable time after full opportunity had been offered to object, during which time he caused the collector to take a note to his partner Davis seeking to have him pay the bill. This was even more than an approval by silence which would have been sufficient. We think this raised the inference of approval of the bill, so as to make it a stated account. Peurifoy v. Hood Rubber Products Co., Tex.Civ.App., 59 S.W.2d 428; Walker-Smith Co. v. Roan, Tex.Civ.App., 43 S.W.2d 1108.

A suit on an open account may be proved by an admission that the account is due and owing. Proof of a stated account is one way to prove an action on an account. "In other words, evidence of a stated account is sufficient proof to support plaintiff's cause of action on an open account, and therefore it may be supported by an implied as well as an express admission, as by the assent which is presumed from acquiescence in an account rendered." 1 C.J.S., Account, Action on, § 16 c (2); 1 C.J., Accounts and Accounting, § 187.

The judgment is affirmed.