**CRAWFORD et al. v. AUSTIN, Banking Com'r. (No. 3295.)\***

Court of Civil Appeals of Texas. Texarkana. Jan. 19, 1927.

Rehearing Denied Feb. 3, 1927.

1. **Partnership** ⬅352—Agreement to associate as limited partnership to sell automobiles, profits to be shared in designated proportions, held prima facie to create partnership.

Written agreement in which parties thereto agreed to associate themselves in a limited partnership to carry on business of selling automobiles purchased from manufacturers under contracts belonging to one party, another party to advance money to pay for them, and third party to furnish his services and time as salesman, parties to share in net profits in designated proportions, *held* prima facie to establish partnership relation, and therefore liability of members for partnership debts created by one partner.

2. **Partnership** ⬅259—Partnership is presumed to continue, unless dissolution is proved, and partners sought to be held on note must prove dissolution occurred before execution of note.

When it has been established that certain persons are partners, presumption is that they continue associated in that relation unless otherwise affirmatively proved, and burden is therefore on former partners seeking to relieve themselves of liability on alleged partnership note to prove that partnership had been finally dissolved before note was executed.

3. **Partnership** ⬅290—Mutual agency of partners did not continue after dissolution as respects bank which never dealt with firm before dissolution, notwithstanding failure to notify bank.

Bank which had not dealt with partnership before its dissolution was not in a position to assert that effect of failure to give it notice of dissolution was to continue liability of each partner for acts of other partners in spite of such dissolution, especially where partnership affairs were administered and wound up as between partners and no third person was creditor when one of partners executed note held by bank.

4. **Partnership** ⬅278—As between themselves, neither partner can bind others after dissolution.

As between themselves, neither partner has any power whatever to act for or bind the others after dissolution of partnership.

5. **Partnership** ⬅279, 286—As respects third persons, dissolution of partnership revokes implied authority of either partner to bind others, and, as respects note sued on, defendants may prove dissolution when it was executed.

As respects third persons, dissolution of partnership works an absolute revocation of all implied authority in either partner to bind others to new contracts or obligations, or to create a new cause binding on the firm, even where the consideration is the debt of the firm, and it was therefore competent, in action on alleged partnership note, for defendants to prove that partnership had been finally dissolved when note was executed, and bank holding note could look for payment only to persons with whom it dealt.

6. **Bills and notes** ⬅371—Accommodation maker held alone liable to bank holding note for value, which knew he was merely accommodation maker (Negotiable Instruments Act, §§ 18, 29).

Under Negotiable Instruments Act (Rev. St. 1925, art. 5933, § 29), accommodation maker

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

\*Writ of error dismissed for want of jurisdiction April 13, 1927.

was alone liable to bank holding note for value, even though bank knew him to be only an accommodation party, and though he executed note in his own trade-name for private debt of his former partner who was also officer of bank, in view of article 5932, § 18.

**7. Banks and banking ⊕=63½—Petition in action on note, alleging that insolvent bank, through state banking commissioner, possessed note held sufficient as against general demurrer.**

Petition in action on note alleging that insolvent bank, through state banking commissioner as liquidating officer, was in possession of note as asset of bank, which note was negotiable and payable to order of bank and not indorsed by bank, *held* sufficient as against general demurrer, and burden was on defendant to prove nonownership or wrongful holding by bank of, or its incapacity to sue on, note, or make a purported claimant, if any, a party defendant.

Appeal from District Court, Cherokee County; C. A. Hodges, Judge.

Action by Chas. O. Austin, Banking Commissioner, against J. M. Crawford and others. Judgment for plaintiff, and defendants appeal. Affirmed in part, and reversed and rendered in part.

The suit was by the banking commissioner of Texas, in liquidation, as the law requires, of the insolvent Alto State Bank, against the Crawford Motor Company, an alleged partnership composed of J. M. Crawford, James H. Kerr, and H. H. Berryman, to recover a personal judgment on a note, claimed to be an asset of the bank, due and unpaid. The note was dated January 24, 1922, and in the sum of $2,990, payable to the order of the Alto State Bank on May 20, 1922, and signed "Crawford Motor Company, by J. M. Crawford, Manager." The defendants Kerr and Berryman specially denied, under oath, the alleged partnership and the execution of the note by them or under their authority. J. M. Crawford specially pleaded:

"That at the time the note was executed there was no partnership existing, and that the note was executed for the accommodation of the defendant James H. Kerr without any benefit (consideration) received therefrom by the said J. M. Crawford, which was known to the Alto State Bank."

After hearing the evidence, the court peremptorily instructed the jury to return a verdict in favor of the ›plaintiff for the amount of the note, less certain credits admitted; and judgment was accordingly entered for the plaintiff against all of the defendants. The defendants have appealed from the judgment, each one complaining of the ruling of the court in the giving of the peremptory instruction, as well as in other matters specially assigned as errors.

It appears from the evidence that H. H.

Berryman and F. F. Florence, living at Alto, Tex., had a local selling agency for Overland and Oakland automobiles. On June 25, 1920, H. H. Berryman, James H. Kerr (who took the place of F. F. Florence) and the "Crawford Motor Company, by J. M. Crawford," entered into a written agreement. The "Crawford Motor Company" was at that date merely the trade-name used by J. M. Crawford in a character of work or business not otherwise described than "the sale of automobiles." The written agreement is as follows:

"The State of Texas, County of Cherokee.

"Articles of agreement between Crawford Motor Company, of Cherokee county, Texas, party of the first part, and Jas. H. Kerr of Cherokee county, state of Texas, party of the second part, and H. H. Berryman of the county of Cherokee and state of Texas, party of the third part, witnesseth:

"The said parties have agreed and by these presents do agree to associate themselves in a limited partnership for the carrying on in the city of Alto the trade, business, and occupation of selling Oakland and Overland automobiles, under the following agreement, to wit: The said Crawford Motor Company to buy said cars under H. H. Berryman's contracts with the Overland and Oakland Automobile Companies in quantities and numbers, as agreeable with said Kerr and Berryman. Said Kerr to furnish the money to pay for said automobiles, taking a note and lien on the cars from the Crawford Motor Company, said note or notes to bear 10 per cent. from date of making, and as the Crawford Motor Company sells these cars the proceeds of said sale to be applied on the above-mentioned note. None of the above-mentioned cars to be sold for credit unless the said Kerr passes on said sale, and the said Kerr is to be the sole judge as to all credit sales.

"Now, in consideration of the above, the Crawford Motor Company is to receive 50 per cent. of all commissions and profits of said car, as per schedule contained in H. H. Berryman's contract with said Oakland and Overland Automobile Companies, and is to pay out of their said 50 per cent. of the commission all expenses to setting said cars up, storage, insurance, interest on above-mentioned notes, and all expenses whatsoever in the premises; the said Crawford Motor Company agrees to carry whatever insurance that the said Kerr and Berryman may deem necessary on said cars at their (Crawford Motor Company's) expense. In consideration of the said Kerr furnishing the money, as above mentioned, he is to receive 25 per cent. of all commissions and profits of said cars, as per schedule contained in H. H. Berryman's contract with said Oakland and Overland Automobile Companies, and is also to receive 10 per cent. per annum on all money borrowed as above mentioned. In consideration of the said H. H. Berryman owning the above-mentioned agencies, he is to receive 25 per cent. of all commissions and profits of said cars, as per schedule contained in H. H. Berryman's contract with said Oakland and Overland Automobile Companies.

"The said Kerr and Berryman are to be in no way connected with the selling of the above-

(293 S. W.)

mentioned cars, and do not agree to stand any of the expenses incurred in the sale of said cars, nor in any way become liable for any expenses incurred in the sale of said cars.

"Witness our hands this the 25th day of June, A. D. 1920. Crawford Motor Company, by J. M. Crawford, Party First Part. Jas. H. Kerr, Party Second Part. H. H. Berryman, Party Third Part."

This arrangement or agreement was, it appears, finally terminated in December, 1921. Mr. Crawford testified:

"I left Alto on the 21st of the preceding December (meaning December 21, 1921) to resume duties as practicing physician for the Frost Lumber Company.' I had closed up the business of the Crawford Motor Company at that time. I closed up that business about the 1st day of December. I turned over everything to Mr. Kerr the 1st day of December. I can't tell you what became of the assets—notes and accounts—belonging to the Crawford Motor Company. Mr. Kerr had charge of them; he had everything. We three gentlemen were not doing any business when I signed the note (January, 1922)."

There does not appear any evidence to the contrary, that this business was finally terminated and dissolved on December 1, 1921, and that all the assets, consisting entirely of notes and accounts, were turned over to Mr. Kerr. The only indebtedness unpaid by the parties at the time of the dissolution, as shown by the record, relates to the subject-matter of the note sued on. On January 24, 1922, the note sued on was executed. It was for the sum of $2,990, payable to the order of the Alto State Bank on May 20, 1922, and signed "Crawford Motor Company, by J. M. Crawford, Manager." At the time of the execution of the note, the defendant Mr. James H. Kerr was the president of the bank. Mr. Berryman testified, and it is not disputed, that:

"I did not have anything to do with the execution of this note sued upon, nor with the proceeds, if any, arising from it. I did not know there was such a note, and I never heard of it before—until after the bank closed. I did not authorize Dr. Crawford to sign this note or any other note to bind me."

The following explanation, and the only one appearing, is given about the note and its execution by Mr. Crawford, who testified:

"As to who executed the note, I will state that James H. Kerr presented it to me and I signed in the capacity as stated there. I signed the note at Mr. Kerr's request. He called me in the bank and stated that he owed the money to the Farmers' & Merchants' State Bank at Rusk for money borrowed to pay on a carload of cars, and that he lacked such amount of money (the $2,990) to take up the note due. He said he was going to get the money from the Alto State Bank, but that he could not get it on his own note—could not borrow it himself—as he was president of the Alto State Bank. At that time Mr. Kerr, Mr. Berryman, and I were not in

partnership. The partnership had been dissolved when the note was executed, something like two months, and I had turned everything over to Mr. Kerr on December the 1st. I took and signed the note and delivered it back to him after I signed it. When I signed that note at the request of Mr. Kerr, it was to enable Mr. Kerr to take up a note that he owed for a carload of cars that were ordered through the East Texas Overland Company. The shipment was made in September, 1920. They were shipped with bill of lading attached, with somewhere around $4,500 payable (being the wholesale purchase price of the cars). He borrowed that money from the Farmers' & Merchants' State Bank in Rusk to take up the bill of lading. That debt, the original purchase price of the cars, was to be paid for in accordance with the contract of June 25, 1920. This present note sued on was to be given for the balance of the purchase money of those cars remaining unpaid. I did not have anything to do with the ordering of the cars. Those cars were sold under the contract between Mr. Berryman, Mr. Kerr, and myself, dated June 25, 1920. Those cars were ordered after that contract was made. Most of the cars were sold on credit, and the paper went to Mr. Kerr."

It does not appear when the Alto State Bank was closed for insolvency.

Perkins & Perkins and Guinn & Guinn, all of Rusk, for appellants.

V. E. Middlebrook, of Nacogdoches, for appellee.

LEVY, J. (after stating the facts as above). [1] The bank commissioner sued the defendants as partners on a note given to the Alto State Bank under the name of "Crawford Motor Company, by J. M. Crawford, Manager." The defendants Kerr and Berryman specially denied, under oath, the alleged partnership and the execution of the note by them or under their authority. The defendant Crawford relied upon the defense, in effect, that he signed the note as done purely for the accommodation, as the private debt, of J. H. Kerr, and that the bank received such note with notice of the consideration. And the principal question presented on the appeal involves the legal correctness of peremptorily instructing a verdict against the defendants, in view of the defenses and the uncontroverted proof offered in support thereof. The evidence relied on by the plaintiff to establish the alleged partnership was derived from the written articles of agreement of the defendants of June 25, 1920. This agreement, it is believed, attempts, by intendment of the immediate parties and in legal effect, to create the actual relation of partners, and to carry out a joint venture for their mutual profit, and can be enforced and construed as creating a partnership. By the articles of agreement all three parties named were assenting to "associate themselves" or act together in the relation, among themselves and in business dealings with third parties, of "a limited

partnership" to consummate the purposes contemplated and declared to be "for the carrying on, in the city of Alto, the trade, business, and occupation of selling Oakland and Overland automobiles." And by the further articles of the agreement there was an agreed joinder of their interests in a common enterprise, its prosecution for their joint account, and an ensuing right in each of them to share proportionately in its net return as such.

Mr. Berryman dedicated to its purposes and aim his "contracts with the Oakland and Overland Automobile Companies," specially inuring in benefit to all three of the parties. No other inference can be indulged than that his intention was to make it a contribution to the capital. By a clearly implied agreement, he permitted his interest in such "contracts" to be put to work as capital in the business, with the expectation of sharing proportionately in whatever profits it might help to produce. Mr. Kerr was to advance the money to pay, in the first instance, the purchase price of the automobiles; and Mr. Crawford, under the name of "Crawford Motor Company," was to furnish his. services and skill as a salesman—all being done with the expectation of sharing proportionately in whatever profits their joint contributions might help to produce. No cars could be purchased under the Berryman contracts except "as agreeable with Kerr and Berryman" and Mr. Crawford. Each one of them had a say as to "quantities and numbers" of automobiles they were "to buy." The original purchase price of the automobiles, when ordered by agreement of all the parties, was to be advanced by Mr. Kerr; but the automobiles so bought were to be devoted to the common object of the "business" of selling automobiles, for the carrying on of which business the parties agreed "to associate themselves." Mr. Kerr was to be repaid first out of the proceeds of the sale of the automobiles, and then share with the other two the net profits realized from the sale of the same. The title to the automobiles so purchased passed to the common business as such, and the profits realized from their sale were to be accounted to the business as such. All the parties were to share the general fate of the business as a common enterprise. If the business yielded no profits, then, in consequence, the parties shared in none. Consequently there existed by the agreement a common enterprise, its operation for the joint account, and the right of each in the community of interests to share as a principal in its profits as such. That is a recognized test of the relation of partners under the established rule in this state. Miller v. Marx, 65 Tex. 131; Stevens & Andrews v. Bank, 62 Tex. 499; Kelley Co. v. Masterson, 100 Tex. 38, 93 S. W. 427; Dilley v. Abright, 19 Tex. Civ. App. 487, 48 S. W. 548.

[2] Accordingly by the articles of agreement the plaintiff established a prima facie case of partnership and therefore the liability of the members, through the authority of one partner to act for and bind the others for the presumed firm debt. The weakness in the proof lay in the fact that the articles do not show an agreement to use or carry on the partnership under the name of "Crawford Motor Company," the name signed to the note. And there was no extrinsic proof that the partners used that name in dealings with the public or third persons. That was the mere trade-name used by J. M. Crawford himself at the time of the signing of the agreement. It is mere conjecture that the defendants, as partners, used that name with authority to J. M. Crawford to do so as the manager of the business. But for the purpose of showing a prima facie case it can be presumed that such name purported to be the trade-name of the partners, sued as defendants. When it has once been established that particular persons are partners the presumption then is that they continue associated in that relation unless otherwise affirmatively proven. The burden was then placed on the defendants to relieve themselves of liability on the note. This burden was met in the proof, which was uncontroverted, at least as to Mr. Berryman and Mr. Kerr, that the partnership was finally terminated and dissolved, and that all the assets, consisting entirely of notes and accounts payable to the firm, were turned over to Mr. Kerr on December 1, 1921.

[3-5] The only indebtedness unpaid at the time of the dissolution was the balance on the original purchase price of the automobiles for which Mr. Kerr was to be paid out of the proceeds of the sale of the automobiles. No other inference can be indulged than that the assets of the firm were turned over to Mr. Kerr and accepted by him in final settlement of this debt. The note to the bank was not executed until January 24, 1922, more than six weeks after the partnership was dissolved and its affairs wound up. The partnership had not carried on a course of dealing with the bank before its dissolution, as far as the record shows, and the bank did not act in the present note in the belief that the firm was still in existence. The bank, not having dealt with the firm before its actual dissolution, was not in a position to assert that the effect of the failure to give it notice of the dissolution was to continue the liability of each for the acts of the other partners in spite of the fact of dissolution. Green v. Waco State Bank, 78 Tex. 3, 14 S. W. 253. And the bank makes no such claim in this case by pleading or proof. Accordingly, in the proof, the former mutual agency of the partners did not continue in spite of the fact of dissolution, in this case, especially so since the affairs of

the partnership were administered and wound up, as between themselves, and at that date no third person was a creditor. As between themselves, neither partner has any power whatever to act for or bind the other after dissolution. This is elementary. And, as regards third persons, the dissolution works an absolute revocation of all implied authority in either of the partners to bind the others to new contracts or obligations, or to create a new cause binding the firm. White v. Tudor, 24 Tex. 639, 76 Am. Dec. 126; ; Bizzell v. Hill (Tex. Civ. App.) 37 S. W. 178; Lubbock Grain & Coal Co. v. Ferguson (Tex. Civ. App.) 227 S. W. 539; 30 Cyc. p. 668; and numerous other cases. And this is true even where the consideration is the debt of the firm, and although the act is one which otherwise would have been within the scope of partnership business. Bell v. Morrison, 1 Pet. 351, 7 L. Ed. 174; Haddock v. Crocheron, 32 Tex. 276, 5 Am. Rep. 244.

[6] Hence, in a suit, as here, to charge the defendants as partners, it is competent for them to prove that, at the time the note was made, the partnership had been finally dissolved. Since there was no longer any partnership, the giving of the note and signing the name of "Crawford Motor Company" by one of the former partners did not bind the firm as such. The bank, then, could not look to persons other than those with whom it was dealing for payment of the note. In legal result Mr. Berryman and Mr. Kerr would not be liable to the bank on the note, although Mr. Crawford would be, as the maker. Mr. Crawford executed the note, as he admits, as an accommodation note; and this fact renders him liable, even though the bank, being a holder for value, knew him to be only an accommodation party The Negotiable Instruments Act (Rev. St. 1925, art. 5933, § 29). This would also be true as to Mr. Crawford, although the note be regarded as executed by him in his own trade-name for the private debt of Mr. Kerr. And, even though such view of the evidence be considered, Mr. Kerr could not be held on the note in a suit strictly on the note. The statute expressly provides that "no person is liable on the instrument whose signature does not appear thereon." Article 5932, § 18. Whether or not Mr. Kerr could be held liable for the payment of the money received in virtue of the note is another question aside from this case, as the suit is strictly on the note and not in the alternative for the debt itself. In order to maintain the present action on the note, the note must be binding on all the defendants or the special maker thereof.

[7] It is believed that the plaintiff's petition is good as against a general demurrer. It sufficiently alleges the facts, and to the

effect that the bank, through the commissioner, was in possession of and holding the note as its "assets." The note was a negotiable note payable to the order of the bank, and was not indorsed by the bank. Prima facie the bank was the owner and holder of the note. In this situation it devolved upon the defendant to plead nonownership or wrongful holding by the bank of, or incapacity to sue on, the note, or make a purported claimant, if there was one, a party defendant to assert and establish his interest, if any he had. It is believed that no reversible error is presented by the record as to Mr. Crawford. Accordingly, the judgment is affirmed as to Mr. Crawford. The judgment is reversed as to Mr. Kerr and Mr. Berryman, and judgment is here rendered in their favor, with all costs incurred by them in the trial and the appellate courts; the costs of appellants Kerr and Berryman to be taxed against the appellee banking commissioner.

Affirmed in part, and reversed and rendered in part.