**T. W. BUCK, Jr., Appellant,**

**v.**

**H. M. REED, Appellee.**

No. 11003.

Court of Civil Appeals of Texas.

Austin.

Nov. 28, 1962.

Rehearing Denied Dec. 19, 1962.

Second Motion for Rehearing Denied Jan. 9, 1963.

Harry S. Pollard, Austin, for appellant.

Gay & Meyers, Austin, for appellee.

HUGHES, Justice.

This suit is on a promissory note dated August 31, 1953, in the principal sum of $9,300.00, executed by Glen Malcolm Shine and appellant T. W. Buck, Jr., payable to J. H. (Dude) Stelfox and secured by a chattel mortgage on one H. D. Allis Chalmers tractor. The note and lien were assigned to appellee H. M. Reed. He sought judgment against Buck on the note for principal, interest and attorneys fees and foreclosure of the chattel mortgage lien. Mr. Shine was not sued.

In a nonjury trial appellee recovered judgment in accordance with his pleading.

Appellant plead that he "executed said note as a co-maker solely for the accommodation of Glen Malcolm Shine, without any past, present, or future consideration therefor to defendant, and J. H. (Dude) Stelfox knew and understood at the time of the execution of said note by Glen Malcolm Shine and this defendant that this defendant had not received and would not receive any consideration of any nature arising from such transaction but was purely an accommodation maker of said note."

Appellee in his Original Petition filed February 7, 1955, the only pleading filed by him, alleged, "That the whereabouts of said Glen Malcolm Shine are unknown and that after diligent effort plaintiff has been unable to locate him."

The Court made the following conclusions of law:

"1. T. W. Buck, Jr., was an accommodation maker of the note described in Paragraph 1 of the Findings of Fact.

"2. H. M. Reed was not a holder in due course of said note.

"3. H. M. Reed was entitled to sue T. W. Buck, Jr., without joining Glen Malcolm Shine as a party to said suit.

"4. T. W. Buck, Jr., is justly indebted to H. M. Reed in the amount of $15,370.03 plus interest at the rate of ten per cent per annum until said debt is paid."

The Court also made, among others, the following findings of fact:

"26. On February 7, 1955, the day this suit was filed, and for many months prior thereto the residence of Glen Malcolm Shine was unknown to H. M. Reed, J. H. (Dude) Stelfox and T. W. Buck, Jr., and H. M. Reed used reasonable diligence prior to filing this suit to ascertain the residence of Glen Malcolm Shine but could not do so.

"27. On October 1, 1953, Glen Malcolm Shine was actually insolvent and such condition persisted to date this suit was filed."

Appellee does not challenge the validity of conclusions of law 1 and 2, and we accept them as correct.

Appellant challenges finding of fact No. 26 on the ground that there is no evidence to support it, and that it is so against the weight and preponderance of the evidence as to be manifestly unjust.

Appellant does not specifically challenge the finding that Shine was insolvent.[1]

■ Appellant Buck in executing the note to accommodate his co-signer, Shine, became liable to the payee of the note, Stelfox, as a surety on the note for his co-maker, Shine. Ward v. Vaughan, 298 S. W.2d 862, Galveston Civil Appeals, and authorities therein cited.

Rule 31, T.R.C.P., provides that no surety shall be sued unless his principal is joined with him except in cases otherwise provided by law. This rule and relevant statutes are set out in Johnson v. J. R. Watkins Company, 337 S.W.2d 477, Austin Civil Appeals, and will not be copied herein.

The two exceptions involved here are that the residence of the principal Shine "is unknown and cannot be ascertained by the use of reasonable diligence" and that Shine is "actually insolvent."

■ The burden was on appellee to plead and prove these exceptions. Johnson v. J. R. Watkins, supra. Insolvency was not pleaded, although appellee relies upon this exception in his brief saying that appellant does not "complain of the finding of the Trial Court to the effect that Shine was actually insolvent from October 1, 1953, to the date this suit was filed."

■ There is no evidence to support this finding for the reason that it conclusively appears that Shine was not insolvent within the meaning of this exception. The reason is that this is a foreclosure suit, and it is conceivable that the property sold will pay the debt, or at least part of it. This question was decided in Smith & Co. v. Ojerholm, 93 Tex. 35, 53 S.W. 341, the Court saying:

"* * * Hence we think that it cannot be said that a principal is insolvent, within the meaning of that statute, when any part of the debt can be made

by execution against him. Such is the construction given to similar statutes by other courts. * * * The term 'insolvency' has widely different meanings. When a trader is unable to meet his obligations in the regular course of business, he is technically said to be insolvent. Should we apply that meaning to our statute, the indorsee would, in some cases, be excused from suing the maker of the note although he might have ample property to satisfy an execution against him. It is in a case where the principal has property, but is not in a condition to meet his debts as they fall due, that the necessity is the more urgent to bring suit for the protection of the indorser. It cannot be said that a debtor is insolvent within the meaning of our law, as to his creditor, when he holds property against which the creditor may enforce a lien for the payment of the debt."

■ With regard to the exception that the residence of Shine was unknown and could not be ascertained by the use of reasonable diligence, it is our opinion that the finding of diligence (No. 26) is against the weight and preponderance of the evidence.

Appellee testified that in August, 1954 he requested his attorney to attempt collection of the note in suit, and to try to locate Mr. Shine; that at that time he did not know where Mr. Shine was and did not know his whereabouts until this case was tried in December, 1961. He also testified that he requested Mr. Stelfox to help find Mr. Shine. What Mr. Stelfox did in this regard, he did not know.

Mr. Meyers, one of appellee's attorneys made a statement into the record regarding this matter and was questioned about it as shown below:

"MR. MEYERS: What our office did was to write to Madisonville to un-

[1]. There is a general assignment that the judgment is unsupported by any competent evidence.

dertake to locate Mr. Shine and addressed only to Madisonville and not to a specific address, since we did not have a specific address. We also got in touch with Mr. Stelfox, and when I have no idea, to find out whether he knew where Mr. Shine was, and of course we asked Mr. Buck in his deposition if he knew, and if I recall he testified in 1960 that he had no idea, which was a year and a half ago, or about a year ago and at that time he had no idea where Mr. Shine was * *.

"MR. POLLARD: May I ask him informally—Mr. Meyers, did you make inquiry at the Courthouse here as to the address given on the check matter—the address given by Mr. Shine on the check matter?

"MR. MEYERS: No, sir. At that time when I made the inquiry I did not know a complaint had been filed. I learned that in the deposition.

"MR. POLLARD: Immediately preceding the filing of this suit, did you or Mr. Gay ask Mr. Buck where Mr. Shine was?

"MR. MEYERS: I did not. I don't know what Mr. Gay did. Mr. Gay did write Mr. Buck a letter with a copy to Mr. Shine, dated August 23, 1954, which I can hand you.

"MR. POLLARD: Now, the copy to Mr. Shine was the one that you referred to as having been written to Madisonville?

"MR. MEYERS: Correct.

"MR. POLLARD: You did not write a direct letter to Shine himself, but you sent him a copy of the letter that had been written to Buck?

"MR. MEYERS: That is correct.

"MR. POLLARD: And that was in fact sent to General Delivery, Madison-ville, since it was merely addressed Madisonville, Texas?

"MR. MEYERS: Yes, and Madisonville is a small town.

"MR. POLLARD: You had no box number but only General Delivery, so from the post office, the general address, they just returned the envelope marked 'Address Unknown'?

"MR. MEYERS: It says on the thing, 'Moved, no order,' I think. I will hand you the envelope and we can introduce it into evidence.

"MR. POLLARD: I think that is a correct reading of the handwriting.

"MR. MEYERS: It says 'Moved, no order,' or 'No address,' I guess.

"MR. POLLARD: It looks like it says 'No order.' " [2]

The deposition of appellant was taken October 3, 1960, and in it he testified that he did not then know where Mr. Shine was.

Mr. Shine testified on the trial as follows:

"Q   Mr. Shine, please state your full name to the Court and for the record.

"A   Glen Malcolm Shine.

"Q   Mr. Shine, where do you live?

"A   In Houston, Texas

"Q   How long have you lived there?

"A   I was born and raised and reared there, and this time I have lived in Houston since November of 1953.

"Q   Prior to that time had you lived in Houston?

"A   Yes, sir.

"Q   Immediately before going back to Houston in 1953, where had you lived?

---

2.  The original envelope is in the record. It bears the notation "Moved No order".

"A In Madisonville.

"Q How long did you live over there in Madisonville?

"A Approximately five months.

"Q Do you have any relatives there in Madisonville?

"A Yes, sir.

"Q Who are they?

"A I have a cousin named Tommy Shine, and I have a grandfather named Sam Crabb, and all of my wife's relatives live there. She was born and raised there, and I have relatives in the Courthouse— the sheriff is my wife's uncle.

"Q At that time they were acquainted with you, and you were acquainted with them, of course?

"A Yes, sir.

"Q At the time you left there, did they know where you had gone?

"A Yes, sir.

"Q You went from Madisonville back to Houston?

"A Yes, sir."

Mr. Shine and appellant served together in the Sea Bees in 1943. They had been friends since then. In 1953 while Mr. Shine and his family were visiting with appellant in Austin, Mr. Shine saw the tractor in suit at the Stelfox place of business. Appellant, who was acquainted with Mr. Stelfox, introduced Mr. Shine to him. Shortly thereafter the sale of the tractor to Mr. Shine was made, Mr. Stelfox acting for the owner, Mr. Reed. In connection with this sale Mr. Shine gave to Mr. Stelfox a $200.00 check drawn on the First National Bank of Madisonville, Texas. This check was not paid on presentation and Mr. Stelfox in October, 1954, filed criminal charges in Austin against Mr.

Shine as a consequence. A warrant of arrest promptly issued and was promptly served by the Sheriff at Madisonville on Mr. Shine. The next day, the check having been paid, Mr. Shine came to Austin to confer with the District Attorney, as to which he testified:

"Q At the time that you were talking to the District Attorney here did you or not tell him where you were living and what your address would be?

"A Yes, sir, that I left forwarding addresses. I told him I contemplated moving to Houston, and I left forwarding addresses to my relatives in Houston. I have many relatives in Houston."

■ Bearing in mind that the liability of a surety is "strictissimi juris" and that he is "favorite of the law",[3] we are firmly convinced that appellee did not exercise reasonable diligence in attempting to locate Mr. Shine before this suit was filed.

■ All that appellee actually did to locate Mr. Shine was send a letter addressed to him at Madisonville some five months before suit was filed. He did ask appellant six years after the suit was filed if he knew where Mr. Shine was. He did not thus inquire of him before the trial. He never did ask appellant whether he knew how to locate Mr. Shine although he knew they had been very close friends. Appellant made no inquiry of anyone in Madisonville as to his whereabouts although he knew through his agent, Mr. Stelfox, that Mr. Shine had given checks on a Madisonville Bank. He did not ask the Sheriff at Madisonville how to find Mr. Shine although the Sheriff had arrested Mr. Shine on the complaint of Mr. Stelfox, the agent of appellee. If the Sheriff could find Mr. Shine and arrest him, it would, with reason, seem that he should be able to locate him for service of civil process. Nor did

3. 39 Tex.Jur. pp. 918–19.

appellee make inquiry of the District Attorney in Austin who had filed the charges for Mr. Stelfox.

The Supreme Court of South Dakota in Davis v. Kressly, 78 S.D. 637, 107 N.W.2d 5, 10, in discussing a similar matter stated: "Diligence which fails to include a recent inquiry as to his whereabouts of counsel, known to have been retained by defendant in connection with the subject matter, in our opinion, can neither be characterized as reasonable nor due."

While the District Attorney was not counsel for Mr. Shine, appellee knew or should have known that he would have means of locating Mr. Shine under the circumstances shown by this record.

It is our opinion that this record does not contain sufficient evidence to support the finding, and to comply with the law requiring that it be shown, that the residence of Mr. Shine could not be ascertained by the use of reasonable diligence before the institution of this suit against appellant.

The judgment of the Trial Court is reversed and this cause is remanded.

### On Motion for Rehearing.

Appellee challenges our conclusion that appellant, accommodation maker of the note sued on, is not suable without joinder of the principal, Shine, saying: " * * * the decision in this case announces an erroneous rule of law that is contrary to an impressive line of decisions by the Supreme Court."

The cases cited to sustain this contention are: Ritter v. Hamilton, 4 Tex. 325 (1849); Reynolds v. Crump, 6 Tex. 85 (1851); Lewis v. Riggs, 9 Tex. 164 (1852); Terrel v. Townsend, 6 Tex. 149 (1851); Hooks v. Bramlette, 1 White and Willson Civil Cases 500, Sec. 863 (1880); McDon-

ald v. Holt, 1 White and Willson Civil Cases 567, Sec. 1013 (1881); and Head v. Cleburne Building and Loan Association, 25 S.W. 810, Dallas Civil Appeals (1893).

The basic cases are the first four cases above cited, all decided before 1858. The last three cases merely follow the prior cases.

These cases hold that in order for a surety to have the statutory privilege of having his principal joined with him in a suit on an obligation he must have "contracted as a surety." [1]

Appellant here did not contract (in writing at least) as a surety. He appears on the note as co-maker or co-principal.

In 1858 (Acts 1858 p. 112) the Legislature enacted a series of statutes regulating the relationship of principal and surety,[2] one of which was new and is present Rule 32 Texas Rules of Civil Procedure, reading:

"May Have Question of Suretyship Tried

"When any suit is brought against two or more defendants upon any contract, any one or more of the defendants being surety for the other, the surety may cause the question of suretyship to be tried and determined upon the issue made for the parties defendant at the trial of the cause, or at any time before or after the trial or at a subsequent term. Such proceedings shall not delay the suit of the plaintiff."

In 1919 the Legislature enacted a Negotiable Instruments Act, Title 98, Vernon's Ann.Civil Statutes Art. 5935, Sec. 58, of such Act, reads in part as follows:

"Sec. 58. In the hands of any holder other than a holder in due course, a negotiable instrument is subject to the

---

1. See also Head v. Cleburne Building and Loan Association, Tex.Civ.App., 25 S.W. 810, Jameson v. Officer, 15 Tex.Civ.App. 212, 39 S.W. 190 and Southern Building and Loan Association v. Skinner, Tex.Civ.

App., 42 S.W. 320, which are of similar import.

2. Title 110 R.C.S.1925, Arts. 6244–6252 inclusive.

same defenses as if it were non-negotiable."

A payee, such as appellee, is not a holder in due course. J. I. Case Threshing Maching Co. v. Howth, 116 Tex. 434, 293 S.W. 800, refusing writ of error to the Dallas Court of Civil Appeals, its opinion being reported in 280 S.W. 238.

This case also stands for the rule that a surety not contracting as such may, as to a holder not in due course, have his suretyship established and be accorded the rights of a surety. We quote from the Supreme Court opinion:

"The 1925 Revised Statutes retain the articles whereby any surety may have a trial of the question of his suretyship, no matter what may be the form of his contract, and whereby any surety may require the prompt enforcement of the contract on which he is surety as soon as it matures. Articles 6244 and 6246, R.S. The statutory rights thus accorded the surety would be utterly defeated if he were compelled to abide by extensions consummated regardless of his will."

The right of suretyship there enforced was the surety's right of discharge from liability because of an unauthorized extension of the obligation. This is not a statutory right. Here, the right of suretyship invoked is one conferred by Rule 31, formerly Art. 6251, Title 110, R.C.S.1925, which is a procedural right only.

We believe that the rights of sureties to be protected extend to all statutory and common law rights once the fact of suretyship is established under circumstances binding on the holder of the obligation.

Cases supporting this ruling are: First National Bank v. Alexander, 4 S.W.2d 298, Amarillo Civil Appeals, writ dismissed; Head v. Texas State Bank, 16 S.W.2d 298, 299, Eastland Civil Appeals; Stetson v. First National Bank of Cleveland, 44 S.W.

2d 792, Beaumont Civil Appeals, 1931, writ ref. and Brinker v. First National Bank, 37 S.W.2d, Tex.Com. of App.

From the first case cited, we quote:

"A party who has signed a note as surety for the other maker may avail himself of the protection which the law affords as surety, as against the creditor, where the latter has knowledge of the relation as surety, though that relation does not appear from the face of the instrument."

It was pleaded and proved in this case that appellant was a surety and that appellee had notice of this fact from the inception of the transaction.

As to the four principal cases cited and relied upon by appellee, they do not appear to have been overruled; they have simply faded away in the light of subsequent legislation and judicial decisions.

The motion is overruled.