**H. M. REED, Petitioner,**

v.

**T. W. BUCK, Jr., Respondent.**

No. A–9449.

Supreme Court of Texas.

July 10, 1963.

Rehearing Denied Oct. 17, 1963.

Gay & Meyers, Austin, for petitioner.

Harry S. Pollard, Austin, for respondent.

NORVELL, Justice.

On August 31, 1953, Glen Malcolm Shine and T. W. Buck, Jr., executed a promissory note in the capacity of makers. The note was assigned to petitioner, H. M. Reed, by J. H. (Dude) Stelfox, the payee named therein. The note was not paid and Reed brought suit against respondent, T. W. Buck, Jr., alleging that the whereabouts of Shine was unknown to the petitioner. The trial court rendered judgment in favor of Reed.

The trial judge filed findings of fact and conclusions of law. Among the findings of fact were the following:

"26. On February 7, 1955, the day this suit was filed, and for many months prior thereto, the residence of Glen Malcolm Shine was unknown to H. M. Reed, J. H. (Dude) Stelfox and T. W. Buck, Jr., and H. M. Reed used reasonable diligence prior to filing this suit to ascertain the residence of Glen Malcolm Shine but could not do so.

"27. On October 1, 1953, Glen Malcolm Shine was actually insolvent and such condition persisted to the date this suit was filed."

The trial judge's conclusions of law were as follows:

"1. T. W. Buck, Jr., was an accommodation maker of the note. * * *

"2. H. M. Reed was not a holder in due course of said note.

"3. H. M. Reed was entitled to sue T. W. Buck, Jr., without joining Glen Malcolm Shine as a party to said suit.

"4. T. W. Buck, Jr., is justly indebted to H. M. Reed in the amount of $15,370.03 plus interest at the rate of ten per cent per annum until said debt is paid."

The Court of Civil Appeals held that it conclusively appeared that Shine was not insolvent [1] and that the trial judge's finding

---

1. This finding of insolvency was not attacked by a specific point in the Court of Civil Appeals. In view of our holdings, however, we need not discuss the propriety of the appellate court's action in setting aside this finding of the trial court.

that Reed had used reasonable diligence to ascertain the residence of Shine was against the overwhelming preponderance of the evidence. (As to overwhelming preponderance of the evidence, see King v. King, 150 Tex. 662, 244 S.W.2d 660.) The judgment of the trial court was reversed and the cause remanded for another trial. 363 S.W. 2d 479.

In his application for writ of error, the petitioner takes the position that as Buck was actually a maker of the note as distinguished from an endorser or one signing in some other capacity than a maker, he is entitled to sue Buck without joining the other co-maker, Shine, even though Buck may have signed the note as an accommodation to Shine and both Reed and his assignor, Stelfox, had knowledge of this fact.

There are Texas authorities which so hold.

In Ritter v. Hamilton, (1849) 4 Tex. 325, Mr. Justice Lipscomb writing for the Court held that even though Hamilton had signed a promissory note as an accommodation to Vining, he could be sued without the joinder of Vining. It was said that:

"It was the bill of each of them, and on which the payee could maintain an action against them jointly or against any one of them. They are in law all principals."

The holding of the Court is brought sharply into focus by the dissent of Chief Justice Hemphill who stated his belief "that when a party is a surety to a note, he must be sued as a surety, whether it appear on the face of the note that he is a surety or not."

In Ennis and Reynolds, Administrators, v. Crump, (1851) 6 Tex. 85, the Court in an opinion by Mr. Justice Wheeler affirmed the holding of Ritter v. Hamilton. In this case, Chief Justice Hemphill noted that although he had not concurred in the holdings of Ritter v. Hamilton and the earlier case of Scott v. Dewees, 2 Tex. 153,[2] he nevertheless recognized that "those decisions have settled the law for the Court," and he did not "feel authorized to dissent further or depart from the rules established by those cases."

In Head v. Cleburne Building and Loan Ass'n, Tex.Civ.App. (1893) 25 S.W. 810, no wr. hist., the Court said:

"The obligation being joint and several, it is well settled that defendants cannot plead that they are sureties, for the purpose of avoiding suit without their co-obligor Pearson being joined. To the plaintiff, they are all principals. Ritter v. Hamilton, 4 Tex. 325; Lewis v. Riggs, 9 Tex. [164] 165; McDonald v. Holt, 1 White & W.Civ.Cas.Ct. App. 1014; Ennis v. Crump, 6 Tex. 85."

The question is one of parties. The cases cited by petitioner stand for the proposition that when one ostensibly contracts as a principal, he may be sued as such without joining another in the suit who likewise contracted as a principal, even though in truth and in fact, he is an accommodation maker for the other and this circumstance is known to the payee in the note.

As noted by the Court of Civil Appeals these cases have never been overruled, but likewise they have not been cited in recent years.[3] Because of this latter circumstance,

2. Scott v. Dewees holds that where the principal is deceased, the surety may be sued alone. The case is hardly in point on the question now before us.

3. Prior to the present case, the last time Ritter v. Hamilton seems to have been cited was in 1897 by the San Antonio Court of Civil Appeals in Southern Building and Loan Ass'n v. Skinner et al., 42

S.W. 320, no wr. hist., in which it was said:
"It is contended by Skinner that no judgment could have been rendered against him without Shoff having been made a party defendant, or an allegation that he was insolvent, or beyond the jurisdiction of the court; Skinner being merely the accommodation maker of the notes for Shoff, of which the

the Court of Civil Appeals was of the opinion that these ancient cases, like old soldiers, had just faded away. Perhaps a re-examination of the holdings of the cases mentioned is called for, but Ritter v. Hamilton and Ennis v. Crump are decisions of this Court and unless there is some good reason for overruling them, they should not be disregarded.

As indicated above, we regard the question as being one of procedure relating to necessary parties, and have come to the conclusion that the greater good will be served by adhering to the rule of Ritter v. Hamilton than in departing therefrom.

The petitioner urges that there are sound policy reasons why a distinction should be made between an accommodation maker and an accommodation endorser or guarantor. The holder of a note is interested in payment. He may make various contracts with an accommodator before he advances his money or passes title to an article in a sale. Where the accommodator joins with the party accommodated and agrees that "I, we, or either of us agree to pay," there is no reason to say that the agreement is something different from what it plainly says on the face, namely, that both makers are jointly and severally liable on the obligation and that consequently the payee or his assignee may sue either or both of the makers on the obligation. While as between the accommodator and the one accommodated, the relationship of principal and guarantor may exist, the accommodator did not contract with the payee of the note in the capacity of a guarantor or surety. He contracted as a principal and the circumstance that the payee may know of the relationship between the accommodator and the one accommodated, would not affect the legal relationship between payee and the accommodator which is that of principal and creditor because

the accommodator contracted in the capacity of a maker.

From a procedural standpoint, the rule is highly practical which permits a note creditor to sue a debtor in the contractual capacity which the debtor assumed at the time the obligation was made. Substantial fact issues may develop in cases similar to this, where one signing as a maker claims to be a surety. Examples of these questions may be given: Is the holder of the note a holder in due course? Is the person who signed as a maker actually a guarantor or surety? It is not an efficient procedure which requires a determination of fact issues in order to decide a problem of parties. In some instances, the settlement of such issues cannot be avoided, but in the circumstance now under consideration, it may be avoided—and without serious detriment to the accommodation maker. He may bring the principal debtor into the suit if this may be accomplished without an unreasonable delay of the case, or he may file an independent suit against the principal to recoup the loss occasioned by his being forced to pay the obligation.

We do not regard the later case of J. I. Case Threshing Machine Co. v. Howth, 116 Tex. 434, 293 S.W. 800, as overruling or modifying Ritter v. Hamilton. In Howth, the Court discussed at some length the question of whether J. I. Case Threshing Machine Company was a holder in due course and held that one "who is an immediate party to a negotiable note on its original completion, is not intended to have the rights of 'a holder in due course.' "

In the present case, the trial judge found that Reed was not a holder in due course. He stood in the shoes of Stelfox, the payee in the note. However, if the original payee be entitled to recover on the note in a suit against Buck alone, then Reed, the assignee of the note, could likewise recover.

appellant association had notice when it acquired the paper. There is clearly no merit in this position. There was no plea touching the nonjoinder of Shoff. Besides, upon the notes Skinner appeared in the capacity as maker, and Shoff as payee and indorser. Ritter v. Hamilton, 4 Tex. 325."

It was further held in the Howth case that:

"A complete defense to the suit of a holder of a nonnegotiable note in behalf of an accommodation maker would be established by his pleading and proving that the holder of the note had made a binding agreement with the principal obligor to extend the note for a definite time, with knowledge of the status of the accommodation maker and without his consent."

■ The Court was obviously speaking of a plea in bar—an extension of payment which was not consented to by the obligor secondarily liable upon the note. The right of a surety to plead and prove any defense he might have to the suit on a note is well recognized in this State. Brinker v. First National Bank, Tex.Comm. App., 37 S.W.2d 136, following J. I. Case Threshing Machine Co. v. Howth, supra. The defense of an unauthorized extension of the time of payment of an indebtedness is available to a party secondarily liable (as between those bound to pay the note) although he actually signed as a maker. But the cases so holding are not contrary to Ritter v. Hamilton, which is essentially a decision relating to parties and procedure and not to pleas in bar and defenses in toto or pro tanto.

■ We hold that when a party signs a note in the capacity of a maker, the payee (or one standing in the shoes of a payee) may sue such maker singly and proceed to judgment upon the note without joining in the suit another or others who may also appear upon the note as co-makers. If in truth and in fact one of the co-makers stands in the relationship of a surety to another co-maker, the burden evolves upon the one claiming a surety's rights to set up those rights by proper pleading and bring into the suit such other parties as may be required to afford him appropriate relief. Rules 30, 31 and 32, Texas Rules of Civil Procedure. We do not have before us a case in which a party defendant signed a negotiable instrument which shows upon its face that he signed in some other capacity than that of a maker.

■ The wording of Section 29 of the Uniform Negotiable Instruments Act (Article 5933, § 29, Vernon's Ann.Tex.Civ. Stat.) indicates that one who contracts as a maker is presumed liable upon a promissory note even though he is an accommodation party and this fact is known to the payee of the note or a party holding under the payee. Section 29 provides that:

"An accommodation party is one who has signed the instrument as maker, drawer, acceptor, or indorser, without receiving value therefor, and for the purpose of lending his name to some other person. Such a person is liable on the instrument to a holder for value, notwithstanding such holder at the time of taking the instrument knew him to be only an accommodation party."

Cases from other American jurisdictions support the proposition that when one signs as a maker, he may be sued as such, although he is an accommodation maker and the party accommodated is not made a party to the suit. In Peoples' Finance & Thrift Co. of Portersville v. Moon et al., 44 Cal.App.2d 223, 112 P.2d 24, the Court of Appeals said:

"Most of the points raised by the appellant depend upon his contention that since he signed the note for the accommodation of Moore, which fact was known to the respondent, he thereby became a surety on the note rather than a comaker thereof and that as such surety he was released from liability by the failure of the respondent to collect the amount due from Moore's estate. This contention requires little consideration. This was a joint and several note and the appellant was an accommodation party and accordingly liable as one of the makers thereof."

■ At times, the party accommodated is not even a party to the negotiable instrument. Crawford v. Austin, Tex.Civ.App., 293 S.W. 275, wr. dis. In such a case even though the payee named in the note or check knows that the maker is an accommodated party, he may nevertheless sue such party without joining any other person. In Schwenker v. Teasdale, 206 Wis. 275, 239 N.W. 434, the court said:

"One may be an accommodation party on a note without receiving value therefor and solely for the purpose of lending his name to some other person and be liable on the instrument to a holder for value, and this notwithstanding such holder at the time of taking the instrument knows him to be only an accommodation party. The purpose of the note was understood by appellant. Under the evidence, there can be no question about the validity, and, so far as the maker is concerned, his agreement is that evidenced by the note and is binding upon him."

On principle it is difficult to distinguish between a case where the actual borrower is not a party to the note and one where he is. The cases do not hold that because a lender knows that the money advanced upon a promissory note will be used by a person who is not a party to the note and not by the maker of the note, the lender, in case of default, must sue the actual beneficiary in the transaction which gave use to the note. Similarly, when the accommodating party signs as a maker together with a comaker who is the actual beneficiary, no good reason exists why he should not be sued in the capacity which he voluntarily assumed. The relation is contractual and one which free contracting parties may determine by their agreement.

A similar rule is applicable when a maker asserts that actually an indorser is primarily liable upon a negotiable instrument. In Home Savings Bank of Davenport v. Kelley, 205 Iowa 514, 218 N.W. 288, the defendant as a special defense pleaded that he had executed the note sued upon as an accommodation to P. F. McCarthy, the indorser on the note; that this circumstance was known to the plaintiff, but that McCarthy had not been made a party to the suit. This special defense was held subject to demurrer and the defendant was held accountable as a maker.

■ The authorities seem to agree that an accommodation maker is primarily liable upon the note signed by him insofar as a holder for value is concerned, even though such holder knew that one maker was in the position of a surety as between himself and the other makers. 11 C.J.S. Bills and Notes, § 739, p. 289. In fact such knowledge would not in itself prevent a party acquiring the note from being a holder in due course as well as a holder for value. In American Jurisprudence, it is said that:

"Under the provisions of the Uniform [Negotiable Instruments] Act, an accommodation maker is deemed primarily liable to a holder for value, and the fact that the holder knew at the time of taking the instrument that such a maker was one for accommodation only does not prevent the holder from taking the instrument as a holder in due course." 8 Am.Jur. 209, Bills and Notes, § 457.

■ Parties to a negotiable instrument are generally held to be liable in the capacity in which they sign the instrument and suable accordingly. Of course, as above pointed out, where the payee (or one holding under him with knowledge of the fact) knows that one of them signed as an accommodation to the other and that as between the makers themselves one is secondarily liable, he cannot change the agreement or increase the burden of the accommodation maker by extending the time of payment, releasing security and the like. However, pleas in bar are not involved in the question of whether an accommodation maker may be sued by the holder of a negotiable instrument without joining the

other comaker in the suit. On the point, we adhere to the rule of Ritter v. Hamilton.

As respondent was the prevailing party in the Court of Civil Appeals, it becomes our duty to examine his brief filed in that court to ascertain whether or not there exists any other grounds than those mentioned in the opinion of the Court of Civil Appeals upon which the judgment of the court may be affirmed.

The respondent as defendant in the trial court pleaded that the note sued upon was given in payment for a tractor; that Reed was actually the owner of the tractor and Stelfox was his agent; that Stelfox in selling the tractor had made various and sundry misrepresentations with reference thereto; and that there was a total failure of consideration for the note sued upon. Defendant tendered the tractor back to Reed and prayed that Reed take nothing by his suit on the note.

As it conclusively appears from the evidence that the tractor, had some value when it was sold, respondent's case based upon a total failure of consideration cannot be sustained. Super-Cold Southwest Co. v. Elkins, 140 Tex. 48, 166 S.W.2d 97. (The holding in Super-Cold with regard to a total failure of consideration was not affected by this Court's later decision in Dallas Farm Machinery Co. v. Reaves, 158 Tex. 1, 307 S.W.2d 233.) There are no allegations as to the tractor's value in its condition at the time it was delivered, so that damages could be measured under some theory of fraud or breach of warranty. The most that can be said of the answer is that, despite the failure to pray for specific equitable relief, there was an assertion that the note sued upon should be cancelled upon a tender of the tractor to Reed. This is an affirmative defense and the burden rested upon the respondent to establish the various elements thereof. The trial court by specific fact findings held against the respondent and we have no hesitancy in declaring that such findings have support in the evidence.

The net effect of a number of these findings was simply that respondent had failed to establish various elements of his pleaded defense. Respondent's brief as appellant in the Court of Civil Appeals contained twenty-two points of error. All were argued together. However, a number of the "no evidence" points attacking specific findings were followed by points asserting that such findings were "against the overwhelming weight and preponderance of the credible evidence as to be clearly wrong and unjust." The Court of Civil Appeals did not rest its decision upon nor discuss respondent's affirmative defense, hence that court did not pass upon these "overwhelming preponderance of the evidence" points which are beyond this Court's jurisdiction. For that reason this cause will be remanded to the Court of Civil Appeals for further consideration.

In order that our holdings may be more readily understood by that court, we will pass specifically upon all of the respondent's points in his brief filed in the Court of Civil Appeals which raise questions of law within this Court's jurisdiction:

Points Nos. 1 and 2 are overruled because they are technically insufficient in that they are too general.

Points Nos. 3, 5, 7, 9, 11, 13, 15 and 17 are "no evidence" points and overruled because they are wanting in merit.

Points Nos. 19 and 20 (attacking the finding that the residence of Glen Malcolm Shine was unknown and that H. M. Reed had used reasonable diligence to ascertain the residence of Shine but could not do so) are overruled for the reason that such findings are immaterial to the controlling issues in this case. The reasons for this holding are set out in the forepart of this opinion.

Points Nos. 20 and 21 purport to attack the conclusion of law that Buck is indebted to Reed in the sum of $15,370.03. These points are too general and technically insufficient to raise a specific question of law.

The remaining points, Nos. 4, 6, 8, 10, 12, 14, 16 and 18 (all "overwhelming preponderance of the evidence" points) have not been determined by us because of our lack of factual jurisdiction.

The judgment of the Court of Civil Appeals is reversed and this cause remanded to that court for further consideration as herein indicated.