**Eugene VICKREY, Appellant,**

v.

**Ronald D. SANFORD, Appellee.**

**No. 17477.**

Court of Civil Appeals of Texas,
Fort Worth.

Feb. 22, 1974.

Coleman & Baldridge, and L. Royce Coleman, Jr., Denton, for appellant.

Griffin, Shelton & Eames, and Robert N. Eames and Mike Griffin, Denton, for appellee.

## OPINION

BREWSTER, Justice.

In this suit for damages for breach of contract the trial court, following a trial by jury, awarded the plaintiff, Ronald D. Sanford, a judgment against the defendant, Engene Vickrey, in the amount of $1,750.00 and Vickrey is here appealing from that decree.

Undisputed facts were: In September, 1972, Sanford was an employee at one of Vickrey's businesses known as the "Sirloin Stockade"; he was manager of it; it was a steakhouse located in Denton, Texas; on Labor Day in 1972 Sanford closed the steakhouse, apparently contrary to orders, and Vickrey's supervisor, who was over Sanford, fired him for doing it; prior to this time Vickrey and others had sought to form a Texas corporation called A to Z Developers, Inc., and in March, 1972, Sanford subscribed for 12,000 shares of the stock of that corporation for a total cost of $4,800.00; of this total cost Sanford paid down $720.00 and Vickrey took Sanford's check for that sum and deposited it in the account of A to Z Developers, Inc.; when Vickrey's supervisor fired Sanford, Sanford asked him what would be done about the money he paid down on the stock subscription and was advised that he would have to see Vickrey about that; he did then see Vickrey and Vickrey presented him with several checks that paid him for all wages due him and also gave him a check for $720.00 on which he wrote, "Refund stock deposit A to Z"; this $720.00 check was signed by Vickrey and was drawn on the account of another of his businesses; Sanford deposited this $720.00 check in his own bank account and from there proceeded to the "Sirloin Stockade" restaurant where he cursed and threatened Vickrey in the latter's absence; Vickrey was advised by those present of Sanford's conduct and on learning of it Vickrey proceeded to stop payment at his bank of the $720.00 check.

On the occasion when Vickrey had given the $720.00 check to Sanford, Sanford had advised Vickrey that he needed the money to pay up bills and to get to Las Vegas, Nevada, at which place he could get a job.

After Sanford had done the cursing at the "Sirloin Stockade", he, on the same day, left for Las Vegas, Nevada, and was there hired at the Golden Nuggett as a dealer and to work at the roulette wheel.

A few days later Sanford called home and was told by his wife that payment had been stopped on the $720.00 check and that Mr. Allen, a vice-president of Denton County National Bank, where he had cashed it, wanted to get in touch with him. He called Allen and Allen wanted him to sign a note for the $720.00.

Sanford testified that he later made a trip from Nevada to Denton to sign the note but that Allen was not there that day, so he went back to Las Vegas and came back at a later date and did sign the note.

Sanford sought in this case to recover the amount of the check ($720.00) plus interest thereon, plus the expenses that he incurred in making the two trips back to Denton, plus exemplary damages.

■ We will first dispose of Vickrey's seventh, eighth and ninth points of error. His seventh point is: "The jury verdict was contrary to the evidence." Point number eight is: "There was no evidence to support the verdict of the jury and the special issues submitted to the jury." Number nine is: "There was insufficient evidence to support the verdict of the jury and the special issues submitted to the jury."

In this case the charge consisted of six separate and distinct issues. The evidence was sufficient to support the jury's findings to at least some of those issues and all of those points must be overruled for that reason.

Vickrey's seventh, eighth, and ninth points of error are so multifarious, general, vague, and indefinite that they are insufficient to direct the attention of this Court to a particular error that it is claimed that the trial court committed that is relied upon for a reversal of the case. They, therefore, do not comply with Rule 418, Texas Rules of Civil Procedure. We also overrule these three points because they are technically insufficient and are too general. Our authority for this holding is Reed v. Buck, 370 S.W.2d 867 (Tex.Sup., 1963).

Special Issue No. 6 in the charge and the jury's answer to each of the three subdivisions thereof were as follows:

"What sum of money, if any, if paid now in cash, do you find from a preponderance of the evidence would fairly and reasonably compensate Ronald D. Sanford for any injuries which you may find from a preponderance of the evidence he may have sustained as a result of Eugene Vickrey's having stopped payment on his check dated September 6, 1972?

"Answer separately in dollars and cents, if any, or 'none', with respect to each of the following elements, if any, and none other:

"(a) Money required to be restored to the Denton County National Bank, if any, including interest, if any, in connection with such restoration.

"ANSWER: $750.00

"(b) Compensatory damages other than any money (including any interest) required to be restored to the Denton County National Bank as inquired about in (a).

"ANSWER: $1000.00

"(c) Exemplary damages.

"ANSWER: None".

Vickrey's point of error No. 4 is that the evidence was insufficient to support the jury's answer to part (b) of Issue No. 6. His point of error No. 1 is that the trial court erred in allowing recovery for expenses, time and inconvenience in trying to collect on the check. His second point of error is that the court erred in submitting an issue inquiring of the jury the amount of money spent for time and inconvenience in collection of the $720.00 check. Actually the charge here had no issue making a direct inquiry as to the matters referred to in point of error No. 2, but part (b) of Issue No. 6 allowed the jury to take those matters into consideration in deciding an answer to that part of the issue. Vickrey's sixth point of error is that the trial court erred in awarding judgment to Sanford for the $1,000.00 in time spent in collecting the $720.00. It is apparent that Vickrey's points of error Nos. 1, 2, 4 and 5 are all related and that they all complain of the part of the case wherein the trial court awarded Sanford a recovery of $1,000.00 for losing his Las Vegas job and for expenses he

claimed to have incurred in making two trips from Nevada back to Texas to sign a note to a bank. Because those four points are all related we will discuss them together. We hereby sustain Vickrey's points of error Nos. 1, 2, 4 and 5.

Sanford's pleadings relating to this particular item of damage was in substance that he had incurred a $1,500.00 loss in losing his job and for expenses that he incurred in making two trips back to Texas from Nevada to sign a note to the Bank that cashed the check and that all this loss was caused by Vickrey's stopping payment on the check.

Issue No. 6 was worded very broadly to where the jury in passing on part (b) of the issue was not confined to just those items of compensatory damages that were pleaded and proved, but since there was no objection to the issue on that ground that point is not involved.

■ If plaintiff, Sanford, is legally entitled to recover for expenses incurred in making the two trips from Nevada back to Texas plus the loss of salary due to losing his job, it would only be on the theory that they were special damages that were within the contemplation of the parties at the time the contract was executed. This is a necessary element if the expenses sought to be recovered are in the category of special damages. See Harrison-Daniels Co. v. Aughtry, 309 S.W.2d 879 (Dallas Tex.Civ. App., 1958, no writ hist.).

In passing on this point we will assume that there was ample evidence to show that it was within the contemplation of the parties when the check was issued that if payment was stopped thereon Sanford might be caused to incur some expense in returning to Texas to try to straighten the matter out and that he could lose his job by reason of making such a trip. Vickrey did object to the submission of part (b) of Issue No. 6 on the grounds that the evidence was insufficient to raise the issue.

To prove himself entitled to recover from Vickrey a particular item of expense as a special damage it was necessary that Sanford offer evidence showing that it was reasonably necessary because of the breach of contract that he incur the particular expense that he sought recovery for and, also, that the amount he paid for such item of expense was a reasonable charge therefor. A recovery of expenses will not be allowed in the absence of such proof. Dallas Railway § Terminal Company v. Gossett, 156 Tex. 252, 294 S.W.2d 377 (1956) and Harrison-Daniels Co. v. Aughtry, supra.

Sanford testified as follows: About three weeks after going to Las Vegas, Nevada, he called his wife and was advised that payment had been stopped on the $720.00 check and that Mr. Allen, vice-president at the Bank where he had cashed it, had called for him and wanted to talk to him about it; Sanford later called Allen and Allen wanted him to sign a note to the Bank for the $720.00; without ascertaining that Allen would be present in Denton on a certain day, Sanford went from Las Vegas to the Denton Bank and arrived there on a day when Allen was out of town; he did not ask the other people at the Bank to let him sign the note in question on that occasion; Allen was due back at the Bank the next day after Sanford went to the Bank the first time, and although Sanford testified that he was in Denton for two or three days on that trip he did not go back to the Bank to try to see if Allen had returned; he then went back to Las Vegas and a bit later he called Allen from Nevada to see when he would be at the Bank and when his boss would not permit him to again take off to see about the note, he just quit his job and came back to Denton and signed the note before Allen at the Bank; on one of the trips from Nevada he flew and in making the other trip he drove his car; it is about 1,300 miles; he lost two days from work on the first trip; he said it is hard for him to say the amount of his expenses he incurred on the trips

from Nevada; his opinion is that it cost him $160.00 to come to Denton and $100.00 to go back to Nevada; it cost him $300.00 to $400.00 loss of salary while on the first trip; on the second trip after quitting his job and coming back here it took him five to seven days to find another job; he earned at Las Vegas between $55.00 and $65.00 a night, including tips; and he cannot tell the exact amount of his expenses on the two trips for he kept no record but he said his losses from both trips were somewhere between $600.00 and $1,000.00.

There was no evidence tending to show that the entire transaction with reference to Sanford signing the note to the Bank could not have been handled by mail, thus rendering both of Sanford's trips to Texas unnecessary. There was no evidence offered to the effect that it was necessary that this note be signed in Denton. The evidence offered concerning the cost of the two trips to Texas was very meager. The evidence offered does not show what items of expense Sanford claims to have incurred in making the two trips to Texas. He does not itemize them. There is no way from a review of this evidence that the jury or this Court can tell that Sanford's expenditures were for recoverable items of expense. He just testified to a lump sum figure that he estimates would cover his expenses of the trips, without testifying as to what the items of expense were. There was no evidence whatever offered tending to show that the amounts he claims to have spent for these expenses were reasonable charges for them.

The jury's answer to part (b) of Issue No. 6 was $1,000.00. The above referred to testimony re expenses incurred on the two trips from Nevada to Texas and the testimony as to money lost by reason of having to quit his job is the evidence in the record on that issue.

■ We hold that this evidence is insufficient to support the jury's answer to part (b) of Issue No. 6. This was obviously a prejudicial error because this $1,000.00 was included in the $1,750.00 judgment rendered against Vickrey.

Vickrey's third point of error is that there is no evidence to support the jury's answer to part (b) of Issue No. 6. We overrule that point. It is obvious that there was some evidence bearing on the issue.

His sixth point of error is that the trial court erred in admitting into evidence the $720.00 check executed by Vickrey that is the subject matter of this lawsuit. We overrule this point. He contends that there was no consideration for the giving of the check.

Vickrey wrote on the $720.00 check, "Refund stock deposit A to Z."

Vickrey testified in substance that if he had honored the check by not stopping payment on it that Sanford's rights to his stock subscription would have terminated "because he was being reimbursed for it, you see."

■ It is obvious that all parties realized that the $720.00 check was given Sanford in cancellation and in extinguishment of all rights he might have had to stock in the A to Z Developers, Inc. corporation. The check was therefore supported by consideration.

From what we have said, it is apparent that the only part of the jury verdict and judgment that was affected in any way by the error we have found to have been made is the $1,000.00 item found by the jury in answer to Issue No. 6, part (b). There were no errors during the trial that affected the remaining $750.00 given in the judgment to Sanford.

This is not such a case that we can of our own accord affirm as to the $750.00 item and reverse and remand the part of the case relating to the expenses and loss of salary for a new trial.

However, if the appellee, Sanford, will file herein within ten days a remittitur of the $1,000.00 plus interest item in the judg-

ment that was awarded to him by reason of the jury's finding in answer to Issue No. 6, part (b), then we will reform the trial court's judgment by reducing the amount thereof by $1,000.00, plus the interest that accrued thereon, and will then affirm it and order the costs paid one-half by each party.

Our authority for this suggested remittitur is Rule 440, T.R.C.P.; Smith v. Dye, 294 S.W.2d 452 (Galveston, Tex.Civ.App., 1956, no writ hist.); Reiswerg v. Martinez, 299 S.W.2d 388 (Fort Worth, Tex.Civ.App., 1957, no writ hist.); and Chemical Express v. Cole, 342 S.W.2d 773 (Dallas, Tex.Civ. App., 1961, ref., n. r. e.); and Austin Road Company v. Ferris, 492 S.W.2d 64 (Fort Worth, Tex.Civ.App., 1973, ref., n. r. e.).

As the case now stands we hereby reverse and remand the case for a new trial and tax all costs of appeal against the appellee, Sanford. This ruling is subject to change, as indicated above, should appellee, Sanford, decide to make remittitur, within ten days from the date of this opinion, of the $1,000.00, plus the interest that has accrued thereon.